**Peter LaFACE, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 83 CIV 5448 (LBS).**

United States District Court, S.D. New York.

May 11, 1984.

Meltzer & Fishman, New York City, for plaintiff; Stanley F. Meltzer, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., New York City, for defendant; Jordan Stanzler, Asst. U.S. Atty., New York City, of counsel.

## OPINION

SAND, District Judge.

This action is brought under section 205(g) of the Social Security Act, as amended (hereinafter "the Act") 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services, Margaret Heckler, (hereinafter "the Secretary"), which denied plaintiff's application for a period of disability and disability insurance benefits sought pursuant to sections 216(i) and 223 of the Act. 42 U.S.C. §§ 416(i), 423.

Plaintiff filed an application for disability insurance benefits on July 14, 1981 (Tr. 105–108). The application was denied initially (Tr. 109–110), and on reconsideration (Tr. 115–116). Plaintiff requested a hearing which was held on August 13, 1982 (Tr. 30–104). Administrative Law Judge Michael P. Friedman (hereinafter "ALJ") considered the case *de novo* and on September 30, 1982 found that while plaintiff is not able to perform his prior work as a police officer due to a physical impairment, he is able to perform sedentary work and is

therefore not disabled within the meaning of the Act (Tr. 10–25). The ALJ's decision became the final decision of the Secretary when approved by the Appeals Council on June 23, 1983 (Tr. 3).

The only issue before this Court is whether the Secretary's determination that the plaintiff is not disabled is supported by substantial evidence. We find that it is not and therefore remand.

*Discussion*

Plaintiff, Peter LaFace, is a male, 36 years of age at the time of the hearing (D.O.B. July 9, 1946–Tr. 105), with a high school education (Tr. 42) and past relevant work as a police officer (Tr. 42). Mr. La-Face alleges disability as of September 23, 1980 due to a back condition. Plaintiff testified that his back problems began with an injury suffered on the job in 1974, damaging his back and right hand. Subsequently the plaintiff reinjured his back in another job related accident in September of 1980. The plaintiff has not worked since that time. On December 31, 1981, the plaintiff was retired by the New York City Police Department on accident disability. The diagnosis of the Medical Board Police Pension Fund Article II was chronic lumbosacral sprain with radicular component. (Tr. 168–69). The three doctor medical board relied on the findings of three examining physicians: Dr. Peter Saadeh's report dated March 9, 1981 indicating possible right SI radicopathy; Dr. Rizzo's examination of October 16, 1980 finding radiculopathy on the right secondary to possible underlying disc at L4–5 and sacralization of L5; and Dr. Richard Raynor's neurosurgical consultation on March 16, 1981 which suggested radiculopathy without objective findings.

A. Statute and Regulations

Disabled persons are provided with benefits by the federal government under the Supplemental Security Income Program ("SSI") if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

An individual will be deemed disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Secretary has adopted by regulation a five step, sequential evaluation process to determine if individuals are eligible to receive or continue to receive benefits. The Second Circuit outlined the five steps in *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).

Initially, if the person is presently engaged in a substantial gainful activity, he or she is disqualified from receiving benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a). Mr. LaFace has been unemployed since September, 1980.

The Secretary must then determine if the claimant suffers a severe impairment. 20 C.F.R. §§ 404.1520(e), 416.920(c). The Secretary does not allege that Mr. LaFace's impairment is not severe.

As to the third inquiry, however, the impairment does not come within those listed in Appendix 1 of the Regulations which are considered *per se* disabilities. 20 C.F.R. §§ 404.1520(d), 416.920(d). Since Mr. LaFace does not have a *per se* condition of disability, the Secretary must, under the fourth step, assess the individual's residual functional capacity (RFC) to see if he or she is capable of resuming prior employment. 20 C.F.R. § 404.1520(c), 416.920(c). The Secretary does not challenge Mr. La-Face's presentation of evidence from the medical Board of the Police Pension Fund which concludes that he is unable to engage in police work.

It is with respect to the fifth and final stage of the evaluation that the claimant and the Secretary have their dispute. The

fifth step calls for a determination of whether Mr. LaFace can perform other work available in the national economy. This assessment is to be made in light of the claimant's residual functional capacity, age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Sedentary work is defined in 20 C.F.R. § 404.1567(a):

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involved sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Social Security Ruling 83–10 specifies that for a job to be sedentary "the periods of standing or walking should generally be no more than about 2 hours of an 8 hour work day and sitting should generally total approximately 6 hours of an 8 hour work day."

With regard to the fifth step in the analysis, the ALJ concluded that Mr. LaFace was capable of engaging in sedentary work. That determination, considered along with the claimant's age, education, and work experience, meant that Mr. LaFace was not disabled within the meaning of the applicable regulations.

B. Burden of Proof and Substantial Evidence

While the claimant bears the burden of proof with regard to the first four steps, the Secretary has the burden of proving that the claimant is capable of performing other work and that such work exists. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980); *accord, Decker v. Harris,* 647 F.2d 291, 294 (2d Cir. 1981).

While the burden of proof rests on the Secretary to determine that Mr. LaFace is capable of work other than police work, this Court's review of the Secretary's factual findings is limited. If the Secretary's finding that Mr. LaFace possesses an ability to engage in "sedentary work" is supported by substantial evidence, we must uphold the Secretary's finding. 42 U.S.C. § 405(g).

The Supreme Court has defined substantial evidence, in this context as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Parker v. Harris, supra,* 626 F.2d at 231–32. Applying this extremely deferential standard, we nevertheless conclude that the record does not sustain the findings of the Secretary and the ALJ that Mr. LaFace is capable of performing sedentary work. The record reflects an inappropriate disregard for the evaluations of an examining physician and a vocational expert and a failure to address the appropriate standards in evaluating plaintiff's residual functional capacity.

The only physician who examined Mr. LaFace and offered a judgment about his residual capacity was Dr. Daniel Shapiro. Dr. Shapiro concluded in his written evaluation of plaintiff's condition that Mr. LaFace has a "total disability, not possible to be gainfully employed because of pain in spinal limitations." (Tr. 167). Although plaintiff had been seeing Dr. Shapiro since June, 1982, the ALJ refused to consider him Mr. LaFace's attending physician because he had begun to see Dr. Shapiro at the suggestion of his attorney and because Dr. Shapiro had seen Mr. LaFace "for a much shorter time" (Tr. 21) than Dr. Helbig. Dr. Helbig saw the plaintiff for less than a year in 1981; Dr. Shapiro saw Mr. LaFace for the two months preceeding the hearing in 1982 with an intent to continue seeing Dr. Shapiro indefinitely.

While recognizing that an attorney's suggestion to his client to see a physician does not invalidate that physician's findings, the ALJ chose to disregard Dr.

Shapiro's findings even though he was the only physician who actually examined plaintiff and offered a conclusion about his residual functional capacity. Although it is the ALJ's responsibility to evaluate the evidence, it was not a reasonable judgment to ignore Dr. Shapiro's findings based on an unarticulated sense of impropriety regarding the way this doctor and this patient found each other. This is especially true since the Secretary presented no evidence from any examining physician to contradict Dr. Shapiro's findings. Furthermore, the report of the doctor designated by the ALJ as the treating physician, Dr. Helbig, and indeed, the findings of all of Mr. LaFace's other examining physicians, were not inconsistent with the findings of Dr. Shapiro. Both Dr. Helbig and Dr. Shapiro concluded that Mr. LaFace had a herniated disc and that he could no longer engage in police work. Dr. Helbig did not, however, opine as to Mr. LaFace's residual functional capacity in other respects. However, this should not be surprising since Dr. Helbig was only considering plaintiff's condition with respect to his possible return to police work.

We find nothing improper, without more, in counsel's recommending to his client a board certified medical doctor, with expertise in rehabilitation, to evaluate and treat his basic injury. Although disreputable doctors and disreputable attorneys might conspire in some instances to commit a fraud in the evaluation of a claimant's injuries, there is no basis in this record to conclude that such a conspiracy took place.

■ Regardless of whether the ALJ designates Dr. Shapiro as Mr. LaFace's treating physician, he is clearly an examining physician. As an examining physician, his opinion is entitled to a higher probative value than the report of a non-examining physician.

The Second Circuit has recently held that the claimant's treating physician's opinion regarding his or her ability to engage in other work is binding on the Secretary unless contradictory evidence is offered. *Carroll v. Secretary of Health and Hu-*

*man Services,* 705 F.2d 638, 642 (2d Cir. 1983). The only medical evidence in this record contradicting the report of Dr. Shapiro is the conclusion advanced by Drs. Elstein (Tr. 109) and Samuel (Tr. 115)—two non-examining physicians.

The reports of Drs. Elstein and Samuel do not provide substantial evidence for disregarding Dr. Shapiro's opinion. As the Eighth Circuit has concluded, "[r]eports of non-examining physicians deserve little weight in overall evaluation of Social Security disability, especially in light of evidence to the contrary." *Davis v. Schweiker,* 671 F.2d 1187, 1189 (8th Cir. 1982); *Williams v. Harris,* 500 F.Supp. 214, 216 (W.D.N.C. 1980). *Accord, Winfield v. Mathews,* 571 F.2d 164 (3d Cir. 1978); *Martin v. Secretary of HEW,* 492 F.2d 905 (4th Cir. 1974); *Echevarria v. Secretary of Health and Human Services,* 685 F.2d 751 (2d Cir. 1982).

Indeed, in addressing the specific question now before us—the relative weight to be given the conclusions reached by examining and non-examining physicians—Judge Glasser has recently held:

> The law is clear that the opinion of a physician who has never treated or examined the claimant is entitled to little weight, and generally cannot serve as substantial evidence supporting a finding of nondisability when the record contains detailed contradictory opinions by physicians who have examined or treated the claimant.

*Ceglia v. Schweiker,* 566 F.Supp. 118, 124 (E.D.N.Y. 1983) citing *Allen v. Weinberger,* 552 F.2d 781 (7th Cir. 1977); *Landess v. Weinberger,* 490 F.2d 1187 (8th Cir. 1974); *Browne v. Richardson,* 468 F.2d 1003 (1st Cir. 1972); *Gudlis v. Califano,* 452 F.Supp. 401 (N.D.Ill. 1978).

Additional evidence supporting the plaintiff's position and contradicting the ALJ's is found in the report of Mr. Provder (Tr. 171–81), a rehabilitation specialist with degrees in rehabilitation counseling. Mr. Provder examined plaintiff on three occasions for a total of six hours. In a detailed report, Mr. Provder analyzes the specific

results of plaintiff's performance on a variety of occupational tests. Plaintiff scored poorly on each of the tests. Mr. Provder concluded that "[g]iven Mr. LaFace's age, education, past work experience and the results of the vocational evaluation performed on this claimant, it is my opinion, as a vocational expert, that Mr. LaFace is unable to perform any substantial gainful activity existing in the local or national economy on a sustained basis." (Tr. 178).

The report of the vocational counsellor which the ALJ discounted is clearly admissible evidence under the Secretary's regulations, 20 C.F.R. § 404.1520(e), and is, in fact reliable primary evidence. *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982).

One final piece of evidence regarding Mr. LaFace's condition is a residual functional capacity evaluation conducted by the New York State Department of Social Services on March 9, 1982 (Tr. 163) which found plaintiff capable of performing sedentary work. This disability "evaluation" was based on the evidence in claimant's file and was not the product of any examination of Mr. LaFace by the disability analyst. For the reasons noted earlier in connection with the discussion of physician's reports, this evidence is entitled to virtually no weight, and certainly does not constitute substantial evidence when weighed against the findings of examining physicians and the vocational expert.

Finally, the ALJ's conclusions were also based upon his own observations of the claimant and his own independent interpretations of test results and data.

For example, the ALJ chose to interpret Mr. LaFace's poor performance on the vocational tests as "symptom magnification" because of "claimant's alleged inability to perform tests involving the understanding of instructions and reasoning ability and other intellectual tasks involving simple or moderate abilities to comprehend." (Tr. 23). The ALJ concluded that because plaintiff was "articulate, intelligent and responsive" (Tr. 23) at the hearing, he should not have done so poorly on the vocational tests. The

ALJ gave less weight to plaintiff's testimony that he suffers totally disabling pain, the vocational expert's judgment that plaintiff suffered from "loss of concentrational ability due to low back and right leg pain" (Tr. 178) and Dr. Shapiro's medical findings than he did to his own observation of the plaintiff at the hearing.

While the ALJ must evaluate the credibility and weight to be given the evidence from his observation of the plaintiff and the witnesses, it is not appropriate for the ALJ to substitute his own opinions for those of experts in matters requiring expert skill, knowledge, or experience.

A plaintiff claiming back pain and the inability to engage in sedentary work may not be adjudged able to work based on his ability to sit for a 78 minute hearing. In such a case, the disability rests upon medical inferences and evaluation. The ALJ's substitution of his own opinion based on his observation at the hearing constitutes a modification of the discredited "sit and squirm" jurisprudence. "[I]n this approach, an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).

It was not appropriate for the ALJ to reinterpret Mr. Provder's test results based on his observations of the claimant at the hearing. Interpretation of the test results requires expert knowledge and training. The ALJ's inference that because claimant was alert at the hearing he should have scored better on the vocational tests does not rebut the possibility that plaintiff was unable to perform satisfactorily on the vocational tests.

Finally, the ALJ performed his own analysis of the claimant's residual functional capacity based upon the report of Dr. Helbig. The ALJ concluded that the symptoms described by Dr. Helbig were not severe enough to warrant the conclusion that he was totally disabled. There are

several problems with this analysis. First, far from minimizing Mr. LaFace's impairments, Dr. Helbig concluded that the plaintiff was unable to engage in police work and should receive "hospitalization, myelogram, and possible surgery." (Tr. 162). Second, Dr. Helbig's report was, as the ALJ himself conceded, "limited." (Tr. 22). It addressed itself only to plaintiff's ability to resume police work and did not purport to evaluate his employability in other respects. Third, the ALJ's conclusion based on the medical evidence is directly contradicted by the findings of Dr. Shapiro, a treating physician, and Mr. Provder, an examining vocational expert, whose conclusions are binding on the Secretary unless contradictory evidence is produced. *Carroll v. Secretary of HHS*, 705 F.2d 638, 642 (2d Cir. 1983).

Determination of plaintiff's residual functional capacity rests with the ALJ, 20 C.F.R. § 404.1546. However, the ALJ must base his judgment on substantial evidence. Reliance on the ALJ's own interpretations of medical and test data, a nonexamining vocational analyst and two nonexamining physicians when examining expert opinions were available does not meet the test for substantial evidence.

The ALJ's decision that Mr. LaFace could do sedentary work was simply conclusory. The ALJ does not discuss Mr. LaFace's claims regarding the length of time he can sit or stand. (Tr. 166). Further, the ALJ fails to show an awareness of the regulatory requirements of sedentary work; he does not evaluate Mr. LaFace's medical condition in light of that standard.

As this Court held in *Deutsch v. Harris*, 511 F.Supp. 244, 249 (1981), the ALJ is required to determine what work "the plaintiff has the physical and mental capability to do." As in *Deutsch*, the ALJ made no finding that there are particular jobs in which Mr. LaFace could satisfactorily perform nor did he "relate the physical capabilities of the plaintiff to the definition of sedentary work." *Id.*

The record indicates that the Secretary's decision is not supported by substantial evidence. On remand, the Secretary must determine, in accordance with the principles discussed in this Opinion, whether the plaintiff is able to perform sedentary work and whether there are jobs available in the national economy which he might do.

SO ORDERED.