**Paul R. SULLIVAN, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CIV–86–558C.**

United States District Court,
W.D. New York.

July 21, 1987.

Lipsitz, Green, Fahringer, Roll, Schuller & James (Michael A. Ponterio, of counsel), Buffalo, N.Y., for plaintiff.

Roger P. Williams, U.S. Atty. (Jane B. Wolfe, Sp. Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

Plaintiff in this action filed an application for disability insurance benefits on March 11, 1985. The application was denied initially and on reconsideration. The plaintiff requested a hearing, which was held on November 27, 1985, before Administrative Law Judge [ALJ] Grenville Harrop. Judge Harrop determined on January 13, 1986, that plaintiff was disabled within the meaning of the Social Security Act and was entitled to benefits.

On February 25, 1986, the Appeals Council, on its own motion, reversed the decision of Judge Harrop and found plaintiff not disabled. The Appeals Council decision became the final decision of the Secretary of Health and Human Services on April 25, 1986. This action is brought to review the decision of the Appeals Council, pursuant to 42 U.S.C. § 405.

Plaintiff was 58 years old at the time of the Appeals Council's determination and has an 11th grade education. His entire work history, from 1952 to 1985, was as a carpenter or a millwright, occasionally in the capacity of foreman or supervisor. On January 8, 1985, while working as a carpenter, plaintiff attempted to lift a heavy wooden platform, and his lower back gave out. Plaintiff has alleged disability as of that date, based primarily on his complaints of constant lower back pain, with pain radiating down his legs.

My review of the record in this case is as follows. Plaintiff was examined at a hospital immediately after his injury on January 8, 1985. He was observed to have difficulty walking. X-rays revealed a decrease in the joint space at LT on 3 and L4 on 5, a slight scoliosis of the lumbar spine with a convexity to the left and some straightening of the normal lordotic curvature. There were findings suggesting spasm of the lumbar spine; also noted was atherosclerosis of the aorta. A diagnosis was made of degenerative disc disease (Item 3, pp. 113–15).

Plaintiff was treated on a regular basis from December 28, 1984, to August 7, 1985, by Dr. William Vickers, who supplied a series of medical reports and assessments, dated August 30, November 19 and 29, December 5, 1985, and March 3, 1986 (Item 3, pp. 122–23, 132–33, 147, 148, 153). In these reports, Dr. Vickers asserted that the plaintiff was totally disabled with regard to his past relevant work, which required climbing ladders and scaffolds and going down in holes (Item 3, pp. 50–51). Dr. Vickers stated that plaintiff was not able to lift or carry more than ten pounds at a time, and then only occasionally; that he could never climb, balance, stoop, crouch, kneel, or crawl; that he would have difficulty in any activity involving pushing or pulling; and that standing or walking for long periods of time would be affected by plaintiff's back impairment and would cause plaintiff increased pain. In one early report, Dr. Vickers stated that his assessment was based solely on plaintiff's complaints of pain; however, he stated explicitly in a number of subsequent reports that he had reviewed plaintiff's x-rays and that the degenerative disc disease apparent in the x-rays was sufficient to cause plaintiff's limitation of motion in his back and his complaints of pain. Upon these clinical findings, he determined that plaintiff was totally disabled for his past relevant work (Item 3, pp. 147–48, 153). Plaintiff was also determined to be disabled with regard to his previous work by Dr. Robert Breezing (Item 3, p. 130), the union physician who examined him for the purpose of determining his eligibility for union disability benefits.

On May 2, 1985, plaintiff was examined by Dr. David R. Cooper, a Board-certified neurologist. Dr. Cooper did not examine the x-rays previously taken of plaintiff, nor did he have any taken himself. He noted that plaintiff had tenderness at L3, L4, and L5, and over the sacrum and over the medial portion of both buttocks. Dr. Cooper stated that plaintiff's gait and station were normal, and that he had no clearly ascertainable muscle weakness or spasm. Dr. Cooper's diagnosis was low back strain superimposed on degenerative disc disease (Item 3, pp. 116–17).

At the time of the disability hearing, plaintiff was taking 600 milligrams of motrin and .5 milligrams xanix daily as a pain killer and muscle relaxant. He was wearing a brace prescribed for him, extending from the top of his hips to the upper part of his thigh. Plaintiff testified that he was in constant pain in spite of his medication (Item 3, p. 47). He stated that he was no longer able to perform the activities that he had before, such as cutting the grass, shoveling snow, painting the house, or playing golf (Item 3, p. 48). He felt that he could probably lift eight to ten pounds and that he could not stand and walk six hours out of an eight-hour day (Item 3, p. 50). He does not climb stairs (Item 3, p. 55), and is only able to sit for an hour at time before stiffening up (Item 3, pp. 55–56).

After review of this record, Judge Harrop concluded that plaintiff was capable of no more than sedentary work; as plaintiff's past relevant work exceeded the exertional requirements of sedentary work, the ALJ concluded that plaintiff did not retain the residual functional capacity to perform his past work (Item 17). He further concluded that plaintiff's age, education, and past work experience precluded the possibility that there was work existing in the national economy which he could perform; therefore, the ALJ entered a finding that plaintiff was disabled under the meaning of the Social Security Act and was entitled to disability insurance benefits.

In overruling the ALJ, the Appeals Council asserted that the later reports in the record from Dr. Vickers, which conclude that plaintiff is unable to perform work requiring more than "sedentary" exertion, are contradicted by Dr. Vickers' earlier reports and by Dr. Cooper's consultative examination report (Item 3, pp. 7–8). The Appeals Council therefore concluded that the "claimant's subjective complaints and the treating physician's recent opinions regarding the claimant's ability to do work activities [are] contradicted by substantial credible medical evidence to the contrary." (Item 3, p. 8). The Appeals Council then

determined that plaintiff retained the residual functional capacity to perform his past relevant work. That work was defined as the work of a millwright supervisor, which the Appeals Council found to be "light work." Based upon these findings, the Appeals Council overruled ALJ Harrop and found that plaintiff was not disabled under the meaning of the Social Security Act at any time through the date of the decision of the ALJ, and was therefore not entitled to benefits.

*Discussion*

■ It has long been the rule in the Second Circuit that a treating physician's findings are binding upon the Secretary unless contradicted by substantial evidence. *Bluvband v. Heckler*, 730 F.2d 886 (2nd Cir.1984). It is also the rule that reports of non-treating, non- or once-examining physicians do not constitute substantial evidence. *Tingling v. Secretary of Health and Human Services*, 575 F.Supp. 905 (S.D.N.Y.1983), and are entitled to little weight. *Chrzan v. Heckler*, 572 F.Supp. 844 (W.D.N.Y.1983).

■ In this case, Dr. Cooper's consultative examination could not constitute substantial evidence contradicting Dr. Vickers' conclusion that plaintiff is disabled. Dr. Cooper, a neurosurgeon, saw plaintiff one time, as noted, did not examine the x-rays of plaintiff's back, made no reference to the degree of difficulty with which plaintiff performed such motions as walking on his heels and toes, and made no findings as to plaintiff's exertional capacity. Neither do Dr. Vickers' early reports on plaintiff's medical condition constitute substantial evidence contradicting Dr. Vickers' later reports. The conclusion of the Appeals Council that there is an actual material conflict between these reports is not warranted. Dr. Vickers' initial report, dated August 30, 1985, is a summary of his telephone conversation on that date with a Department of Health and Human Services [HHS] representative regarding plaintiff's claim. The summary, provided by HHS and signed by Dr. Vickers, is one paragraph in length and very general in its statements. The summary states, for instance, that plaintiff has "mild to moderate loss of range of motion" in his lower back and that he can "walk normally" though he has "arthritis of the lumbrosacral spine." (Item 3, p. 129.) Significantly, the summary does not at all address the issue of the severity of plaintiff's pain from his back condition, and offers no specific evaluation of plaintiff's residual functional capacity, his ability to do his past relevant work, or his ability to do any work. Dr. Vickers' second report, dated November 19, 1985, is a detailed medical assessment of plaintiff's ability to perform a range of work-related activities on a day-to-day basis in a regular work setting. Dr. Vickers' assessments indicate that plaintiff would be unable to perform any work requiring more than "sedentary" exertional capacity. Dr. Vickers explicitly confirmed this conclusion in his third report, dated November 19, 1985 (Item 3, p. 147), and reiterated that determination in his fourth and fifth reports, dated December 5, 1985, and March 3, 1986. I find that there is some variation in the specificity and focus of these reports, but no actual conflict on matters centrally material to determining whether plaintiff is disabled. For instance, it was not a contradiction for Dr. Vickers to state in the November 19, 1985, report that his assessment of plaintiff's disability was based only on plaintiff's subjective complaints of pain, and then to state later that an examination of plaintiff's x-rays evidenced a clear basis for that pain. Dr. Vickers thus ultimately corroborated his earlier finding of disability on the required objective basis, but there is no contradiction in these findings. At no point did Dr. Vickers indicate that plaintiff's capacity for exertion was any greater than that indicated in his assessments of November 5, 1985, or March 3, 1986 (Item 3, pp. 148, 153).

■ The Appeals Council determined that plaintiff's past relevant work was as a millwright supervisor. The Appeals Council made this determination despite acknowledging that plaintiff had worked as a millwright supervisor only once in his 34-year career. The Appeals Council also acknowledged that *all* of plaintiff's past jobs,

*as actually performed,* required an exertional capacity for "medium" or "heavy" work. However, the Appeals Council dismissed the relevance of this fact on the ground that the *Dictionary of Occupational Titles* (4th Ed. 1981) describes the position of millwright supervisor as one requiring an exertional capacity for "light" work. The Appeals Council then stated that even if plaintiff had not worked in the last 15 years as a millwright supervisor, as required by section 404.1565 of the Regulations, that fact could also be dismissed on the asserted ground that plaintiff has from his past work "acquired supervisory skills which would be required of a foreman ...." (Item 3, p. 8.)

In my view, this series of statements is a mockery of a fair-minded analysis. For example, section 404.1565 of the Regulations explicitly states: "The fifteen year guide is intended to insure that remote work experience is not currently applied." It is hard to see how the statement from the Appeals Council that dismisses the potential relevance of the fifteen-year limit for this claimant is anything other than a circumvention of the rule which the Council is entrusted with applying. Moreover, it is not reasonable to determine the plaintiff's past relevant work by a method which completely dismisses his actual work of the past 34 years, and the actual exertional requirements of that work.

Further, even the "past relevant work" referred to by the Appeals Council required a residual functional capacity for "light" work. The record in this case indicates, as Judge Harrop originally found, that plaintiff has the residual functional capacity for no more than "sedentary" work.

■ The Social Security Regulations describe "light" work as work which involves lifting no more than 20 pounds at a time, with frequent lifting and carrying of objects weighing up to 10 pounds, along with a good deal of walking or standing, or pushing and pulling of arm or leg controls. To be considered capable of performing light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b). The Appeals Council bases its determination that plaintiff is capable of performing "light" work on the consultative report of Dr. Cooper and on its interpretation of the first report of Dr. Vickers. I disagree, as noted, that Dr. Vickers' first report diverges so radically from his others, which clearly contradict the determination of the Appeals Council that plaintiff is capable of performing "light" work. Moreover, the reports upon which the Appeals Council relies make no finding as to plaintiff's exertional capacity. In assessing residual functional capacity, the Secretary must make his own findings, specifying what functions plaintiff is capable of performing, and not simply make conclusory statements regarding plaintiff's residual functional capacity. 20 C.F.R. § 404.1546; *Townley v. Heckler,* 748 F.2d 109 (2d Cir.1984). The Appeals Council made no specific findings as to what functions plaintiff could perform that would support the characterization of a residual functional capacity for "light" work, as this circuit mandates.

In sum, the determination of plaintiff's treating physician, Dr. Vickers, that plaintiff is totally disabled for his past relevant work and has the residual functional capacity for no more than "sedentary" work is not contradicted by substantial evidence in the record. Dr. Vickers' conclusion is also supported by that of Dr. Breezing, plaintiff's union physician.

■ I therefore find that the determination of the Appeals Council that plaintiff is capable of performing his past relevant work is not supported by substantial evidence in the record.

Plaintiff was 58 years old at the time of the Appeals Council's determination, which is defined as "advanced age" (C.F.R. § 404.1563); he has an eleventh grade education, which is defined as "limited" (§ 404.1564); his past work as a carpenter was "skilled" (§ 404.1568); however, his skills are not easily transferable to any work existing in the national economy, considering his residual functional capacity for sedentary work and his age (Pt. 404, Subpt. P, App. 2, § 201.00[f]). Taking these factors into consideration, Table No. I of

App. 2, Pt. 404, Rule 201.02, indicates that plaintiff is disabled. Therefore, for the reasons I have stated, I find that the decision of the Secretary is not supported by substantial evidence, and the Secretary's decision is hereby reversed. This case is remanded to the Secretary for the calculation of benefits due plaintiff dating back to January 8, 1985.

So ordered.