Vincent LaPORTA, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

No. 86–CV–1201.

United States District Court, N.D. New York.

May 14, 1990.

On February 8, 1989 Magistrate Di Bianco issued a report recommending that a remand for further proceedings is required because the Secretary did not correctly evaluate plaintiff's residual functional capacity. Upon a review of the entire record in this case, including the plaintiff's objections to the magistrate's report-recommendation, the petition, and the Secretary's memorandum of law in support of his motion for judgment on the pleadings, the court agrees with the Magistrate's recommendation for the reasons stated therein.

█ A determination that a person can work is predicated upon a finding of residual functional capacity (RFC), which must be established by demonstrating by substantial evidence each of the criteria of the physical requirements in the regulations. *Benko v. Schweiker*, 551 F.Supp. 698, 705 (D.N.H.1982). The Secretary must consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant and others. *Ferraris v. Heckler*, 728 F.2d 582, 585 (2nd Cir.1984). In assessing RFC, the Secretary must make findings specifying what functions plaintiff is capable of performing, not simply making conclusory statements regarding plaintiff's capacities.

Legal Services of Central New York, Inc., Syracuse, N.Y. (Lewis Golinker, Frederick M. Stanczak, of counsel), for plaintiff.

Frederick J. Scullin, Jr., U.S. Atty. N.D. New York, Syracuse, N.Y. (William F. Larkin, Asst. U.S. Atty., of counsel), for defendant.

### ORDER

McAVOY, District Judge.

This matter originally referred to the late United States Magistrate Conan pursuant to 28 U.S.C. § 636(b) and Local Rule 44(F), was subsequently referred to Magistrate Gustave J. Di Bianco for report and recommendation by this Court by Standing Order dated March 22, 1984.

This court adopts the facts contained within defendant's "Statement of the Case" as did the Magistrate with any exceptions as noted, and to the extent that they are consistent with the Report–Recommendation.

█ In the instant case, the ALJ found plaintiff capable of performing light work. (Tr. at 9, 10). However, the ALJ failed to show by substantial evidence that plaintiff can perform each of the requirements of light work as set forth in 20 C.F.R. § 404.1567(b). Therefore, upon remand, the ALJ must specifically state what requirements of light work plaintiff is capable of doing and the basis for his determination.

### REPORT AND RECOMMENDATION

GUSTAVE J. DI BIANCO, United States Magistrate.

This matter, assigned to the Honorable Thomas J. McAvoy, United States District Judge, was originally assigned to the late Magistrate Conan pursuant to 28 U.S.C. § 636(b) and Local Rule 44(F), subsequent-

ly referred to the undersigned and has proceeded in accordance with a Standing Order of this Court dated March 22, 1984, setting forth the procedure to be followed in such appeals from a denial of Social Security benefits. Briefs were filed by the parties, but no oral argument was held.

## FACTS

This court adopts the facts contained within defendant's "Statement of the Case" with any exceptions as noted, and to the extent that they are consistent with this Report–Recommendation.

## CONTENTIONS

Plaintiff makes the following claims:

1) the Administrative Law Judge (ALJ) failed to apply the correct legal standard in considering plaintiff's allegations of disabling pain,

2) the residual functional capacity determination that plaintiff can do light work is erroneous; and

3) there is new evidence, which was not available at the Administrative Hearing, to support plaintiff's request for a remand.

Defendant opposes plaintiff's claims on all issues and contends that the ALJ's decision was supported by substantial evidence. Additionally, defendant argues that the new evidence submitted by plaintiff does not meet the requirements of 42 U.S.C. § 405(g).

This court finds that a remand for further proceedings is required because the Secretary did not correctly evaluate plaintiff's residual functional capacity.

## DISCUSSION

1. *Pain and Credibility*

Plaintiff argues that he has numerous medical impairments that can cause pain which the ALJ did not properly consider in his decision.

With respect to plaintiff's allegations of disabling pain, this court recognizes that subjective pain may serve as the basis for establishing disability even where the pain is unsupported by clinical or medical find-ings so long as an underlying impairment can be medically ascertained. *Gallagher v. Schweiker*, 697 F.2d 82, 84 (2nd Cir.1983); *see also Hankerson v. Harris*, 636 F.2d 893 (2nd Cir.1980); *McLaughlin v. Secretary of HEW*, 612 F.2d 701 (2nd Cir.1980); *Marcus v. Califano*, 615 F.2d 23, 27 (2nd Cir.1979).

In the Social Security Disability Benefits Reform Act, Congress codified the standard for evaluating disabling pain. 42 U.S.C. § 423(d)(5)(A). The language of the statute requires medical evidence of a condition that could reasonably produce pain. *Id.* It is not required that there be objective evidence of the pain itself or its degree. *Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir.1986). There is no requirement of a direct tie between objective medical findings and a specific level of pain. *Id.* Although the new statute may slightly change some of the Second Circuit law on the analysis of pain, it does not change the requirement that pain must be properly evaluated, considering the applicant's credibility and motivation as well as the medical evidence of impairment to eventually reach an independent judgment concerning the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. *See Marcus*, 615 F.2d at 27.

In addition, the Secretary is entitled to rely upon the medical record and his evaluation of credibility in determining whether the individual suffers from disabling pain. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2nd Cir.1983).

Here, the ALJ did not find plaintiff's complaints of pain credible based upon the "minimal clinical findings, the extent of his activities, the minimal use of pain medication, and the effectiveness of the medication." (Tr. at 10). The ALJ determined that there was no medical evidence prior to 1983 to indicate a disability due to cardiac abnormalities or neuromuscular illness. (Tr. at 9). The ALJ also found that the anti-nuclear antibody (ANA) blood test results were too minimal to suggest a diagnosis of lupus. (Tr. at 9).

Dr. Max Kutzer, a board-certified internist, was plaintiff's treating physician between 1983 and 1987. While referring to Dr. Kutzer's diagnosis of arthritis of the spine, the ALJ noted that Dr. Kutzer reported only mild swelling and no major deformities of the plaintiff's joints. (Tr. at 9, 163, 166, 167). The ALJ also indicated that x-ray studies showed only mild degenerative changes. (Tr. at 9).

With regard to plaintiff's activities, the ALJ stated that plaintiff takes care of his personal needs without assistance, drives an automobile, visits his children and grandchildren and works at his tavern three to four hours a week. (Tr. at 9, 24, 39, 40).

Concerning the use of pain medication and its effectiveness, the plaintiff testified that he takes prednisone maybe two or three times a day, and percodan for pain, four pills over a three day period, as necessary. (Tr. at 34). Plaintiff also stated that he took two aspirins every couple of days for mild pain. (Tr. at 35). Additionally, plaintiff said that the percodan relieved all of his pain for approximately two and half hours, and when the pain returns it's not as strong. (Tr. at 41). Dr. Kutzer's reports indicate that plaintiff took prednisone intermittently and that he obtained complete relief with that drug. (Tr. at 155, 157).

In conclusion, the court finds that the ALJ properly evaluated plaintiff's subjective complaints of pain, and under the applicable law found no substantial and objective medical findings that could warrant disabling pain, and further that the plaintiff's complaints of pain were not credible. The law is clear that once the ALJ properly evaluates plaintiff's subjective symptoms of pain and makes a finding, the court is in no position to supplant its opinion for that of the ALJ under such circumstances. *Marcus*, 615 F.2d at 27.

### 2. *Residual Functional Capacity*

A determination that a person can work is predicated upon a finding of residual functional capacity (RFC), which must be established by demonstrating by substantial evidence each of the criteria of the physical requirements in the regulations. *Benko v. Schweiker*, 551 F.Supp. 698, 705 (D.N.H.1982). The Secretary must consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant and others. *Ferraris v. Heckler*, 728 F.2d 582, 585 (2nd Cir.1984). In assessing RFC, the Secretary must make findings specifying what functions plaintiff is capable of performing, not simply making conclusory statements regarding plaintiff's capacities. *Sullivan v. Secretary of HHS*, 666 F.Supp. 456, 460 (W.D.N.Y.1987).

In the instant case, the ALJ found plaintiff capable of performing light work. (Tr. at 9, 10). In support of his finding, the ALJ noted that there were no major joint deformities, mild degenerative changes as shown by x-rays, and plaintiff was receiving conservative treatment with no surgery scheduled. (Tr. at 9). This finding is further supported by the report of Dr. Paul Buckthal, a board-certified neurologist, who examined plaintiff on May 10, 1979 and found no evidence of neuromuscular illness. Dr. Buckthal suspected an "anxiety tension syndrome". (Tr. at 137). Dr. Wayne Middendorf, a board-certified internist associated with the Mayo Clinic in Rochester, Minnesota, examined plaintiff during July of 1979 and April of 1980. In July of 1979, he concluded that "plaintiff's complaints were due to tension myalgias ..." (Tr. at 140), and in April of 1980 concluded that "we have found nothing except tension myalgias even after extensive workup by Rheumatology, Allergy, Physical Medicine and myself ... there just isn't any significant disease that I can find at this time...." (Tr. at 149).

Later reports by Dr. Kutzer commented on x-ray findings which show no visible major deformities of the joints, normal cervical spine and other normal findings. (Tr. at 168).

However, the ALJ failed to show by substantial evidence that plaintiff can perform each of the requirements of light work as set forth in 20 C.F.R. § 404.1567(b). The regulation defines such work as

involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

*Id.* Although two RFC assessments are found in the record, they were both prepared by non-examining physicians, Dr. Micale and Dr. Suitor. (Tr. at 48–52, 58–61). Their findings that plaintiff can perform work are entitled to little weight. *LaFace v. Heckler*, 589 F.Supp. 192, 196 (S.D.N.Y. 1984). Therefore, upon remand, the ALJ must specifically state what requirements of light work plaintiff is capable of doing and the basis for his determination.

Although plaintiff contends that the ALJ did not adequately question him about the side effects of the medication he takes, the court finds this argument without merit. The ALJ specifically asked plaintiff about any side effects from the medicines he was taking. (Tr. at 41–42). Plaintiff indicated that prednisone had formerly given him problems, but that the doctor had taken him off of it, substituted another medication and later put him back on prednisone. (Tr. at 41–2). When asked if he now had any side effects from any of the medication, the plaintiff explicitly replied that he did not know of any. (Tr. at 42). Further, none of Dr. Kutzer's reports indicate that plaintiff is currently suffering from any side effects from taking prednisone. (Tr. at 155–157, 165–166).

Plaintiff also argues that the ALJ's categorization of his occupation as light work is incorrect. Plaintiff maintains that his job, as actually performed by him, is medium in exertional level as described in The Dictionary of Occupational Titles (DOT). Plaintiff asserts that the ALJ's failure to refer to the source of his exertional determination is error. (Plaintiff's Memorandum of

Law at 25–26). This argument is groundless.

Pursuant to 20 C.F.R. § 404.1566(d)(1), administrative notice will be taken of job data from governmental and other publications, one of which is The Dictionary of Occupational Titles. Moreover, the law in the Second Circuit is well settled that in order to be found disabled, the claimant must show that he is unable to return to his former "type" of work as *generally* performed in the national economy, not simply to his previous job. *Jock v. Harris*, 651 F.2d 133, 135 (2nd Cir.1981). As a result, although plaintiff may have had to move beer kegs as part of his job as a bartender, the DOT description of a bartender is categorized as light work.[1] Thus, the ALJ's characterization of plaintiff's occupation as a tavern owner/bartender which involves light work is not incorrect.

### 3. *New Evidence*

To meet the test of remand based on new evidence, a plaintiff must show that the proffered evidence

is (1) "new and not merely cumulative of what is already in the record", *Szubak v. Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir.1984) and that it is (2) material, that is both relevant to the claimant's condition during the time period for which benefits were denied and probative, *see Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir.1975). The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently ...

*Tirado v. Bowen*, 842 F.2d 595, 597 (2nd Cir.1988); *Szubak v. Secretary of HHS*, 745 F.2d 831, 833–4 (3rd Cir.1984).

Plaintiff has included for consideration a report from Dr. Kutzer regarding the development in December 1987 of a disabling cardiac condition and a statement by Dr. Kutzer concerning plaintiff's disability due

---

**1.** A copy of the DOT definition of bartender as well as the physical characteristics of the job are   attached.

to arthritis and possible Lupus. (Plaintiff's Brief, Attachments B & C).

a. Disability due to Arthritis and Possible Lupus

Plaintiff has submitted a set of written questions answered by plaintiff's treating physician, Dr. Kutzer, after the ALJ had rendered his decision in 1986. (Plaintiff's Brief, Attachment B). However, the answers to these questions do not constitute new evidence.

In the questionnaire submitted by plaintiff and dated May 26, 1988, Dr. Kutzer indicated that his diagnosis of plaintiff's condition in October, 1983 was "arthritis, *probably* rheumatoid and hypertropic *? Lupus*—borderline lupus test positive." (Attach. B–Plaintiff's Brief 9/6/88) (emphasis supplied). Notwithstanding, in 1985 Dr. Kutzer reported that plaintiff's diagnosis appeared to be either early onset of lupus or early rheumatoid arthritis or fibrositis; with no definite diagnosis. (Tr. at 156). On February 26, 1986, Dr. Kutzer reported that plaintiff's diagnosis appeared to be "arthritis of the spine, possible polymyaldgia rheumatica. ? Lupus." (Tr. at 166). Also found in the record are numerous ANA test results that were positive. (Tr. at 101, 102, 103, 104, 155, 157, 159, 160). Thus, it is clear that Dr. Kutzer's answer regarding his 1983 diagnosis of plaintiff's condition is merely cumulative, not "new and material".

Likewise, although Dr. Kutzer stated in 1988 that plaintiff's condition has become progressively worse, it not determinative of plaintiff's disability at the time of the hearing in 1986. For the same reason, Dr. Kutzer's evaluations of plaintiff's ability to perform work in 1988 are not helpful in ascertaining plaintiff's residual function capacity in 1986.

As a result, it is unlikely that this evidence submitted by plaintiff is 'material' in the sense that the ALJ would have altered his decision had he had these answers at the hearing in 1986. Therefore, plaintiff's claim that this new evidence regarding his disability due to arthritis and lupus necessitates a remand is without merit.

b. Coronary Impairment

Plaintiff also seeks a remand based upon new evidence supplied by Dr. Kutzer to prove a disability due to a heart condition, more specifically, a left bundle branch block. (Plaintiff's Brief, Attachment C). Plaintiff contends that this evidence is relevant to plaintiff's complaints of chest pain and attempt to receive treatment at St. Joseph's Hospital in 1979. In addition, plaintiff maintains that the ALJ's failure to question him regarding his chest pains, in light of the new evidence, requires a remand. (Plaintiff's Brief at 29). Plaintiff's contention is without merit since it does not meet the requirements of the statute.

On August 22, 1985, plaintiff filed an application for disability benefits alleging a disability due to arthritis of the spine and borderline lupus dating back to 1983. (Tr. at 44–47). Plaintiff neither alleged nor is there is anything in the record to suggest that plaintiff had a heart problem during the disability period in question.

Prior to 1983, a 1978 electrocardiograph report of plaintiff prepared by Auburn Memorial Hospital Medical Staff was normal. (Tr. at 110, 119). In January 1979, plaintiff underwent coronary testing at St. Joseph's Hospital. (Tr. at 120–136). The final diagnosis was a normal cardiovascular system. (Tr. at 120). The ventriculography was negative, and plaintiff's coronary arteries were completely normal with no evidence of atherosclerosis. It was believed that the patient's symptomatology was not related to myocardial ischemia caused by coronary atherosclerotic involvement. (Tr. at 125). In July, 1979, plaintiff's electrocardiogram report from the Mayo Clinic was negative. (Tr. at 140). On March 2, 1981, Dr. Jabb's physical examination of plaintiff revealed that his heart was normal. (Tr. 99).

With regard to the 1983 onset date of plaintiff's alleged disability and the time thereafter, both Dr. Jabb's (plaintiff's treating rheumatologist) and Dr. Kutzer's reports are silent with regard to any heart condition plaintiff may have had. In fact, on October 14, 1983, Dr. Jabb wrote to Dr. Kutzer indicating that plaintiff's EKG tests

among others were negative. (Tr. at 104). In short, there was absolutely no evidence in the record to support plaintiff's claim of a disability due to a heart problem at the time of his hearing in 1986. Consequently, Dr. Kutzer's reports of December 1987 and January 1988 are insufficient to provide a basis for a remand as they indicate a new disability not one previously stated in the record.

WHEREFORE, on the basis of the above, it is

RECOMMENDED, that this case be remanded to the Secretary for a proper determination of plaintiff's residual functional capacity consistent with this Report–Recommendation.

Dated: February 8, 1989.