**Joanne MELCHIOR, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.**

No. 97–CV–548.

United States District Court, N.D. New York.

July 27, 1998.

Oot & Associates, Utica, NY (David Philippone, of Counsel), for Plaintiff.

Thomas J. Maroney, United States Attorney, Northern District of New York, Syracuse, NY (William H. Pease, Assistant U.S. Attorney, of Counsel), for Defendant.

1. Effective September 29, 1997, Kenneth S. Apfel, acting Commissioner. FRCP 25(d)(1).

## MEMORANDUM–DECISION AND ORDER

HURD, United States Magistrate Judge.

This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security ("Commissioner"), denying the plaintiff's claim of Supplemental Security Income. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted to this court without oral argument.

## I. PROCEDURAL HISTORY

On September 19, 1994, the plaintiff filed an application for Supplemental Security Income benefits pursuant to Title XVI of the Act. The application was denied initially and again on reconsideration. Subsequently, the plaintiff made a request for a hearing before an Administrative Law Judge ("ALJ"). As a result, ALJ Alfred R. Tyminski conducted a hearing in Syracuse, New York on July 19, 1995. Following the hearing, on September 12, 1995, the ALJ concluded that the plaintiff was not disabled, and therefore not entitled to Supplemental Security Income benefits.

On February 22, 1997, the Appeals Council rejected plaintiff's request for review of the September 12, 1995 hearing decision. Consequently, the ALJ's decision became the final decision of the Commissioner. Plaintiff now brings this appeal. This court must determine if the findings of the Commissioner of Social Security are supported by substantial evidence.

## II. FACTS

This Court adopts the facts set forth in the plaintiff's brief with any exceptions as noted.

## III. CONTENTIONS

Plaintiff contends that the ALJ's decision was erroneous for the following reasons:

1. The ALJ erred in failing to find that the plaintiff's asthma met the criteria of a listed impairment in appendix 1, subpart p, regulations No. 4.

2. The ALJ's determination that the plaintiff is not disabled is not supported by substantial evidence.

## IV. DISCUSSION

### 1. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence in the record to support such decision. *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Rivera,* 923 F.2d at 967 (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988)(citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951), *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983)). However, a reviewing court must not substitute its interpretation of the administrative record so long as there exists substantial support for the decision in the record. *Williams,* 859 F.2d at 258.

Additionally, the scope of review involves determining *both* whether the Commissioner has applied the correct legal standard and whether the determination is supported by substantial evidence. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987). Thus, where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standard, even if the ultimate decision may be arguably supported by substantial evidence, the Commissioner's decision may not be affirmed. *Johnson,* 817 F.2d at 986.

### 2. Five–Step Disability Determination

The regulations of the Commissioner mandate that the ALJ follow a five step evaluation process to determine whether an individ-

ual is disabled.[2] *See Singletary v. Apfel*, 981 F.Supp. 802, 805 (W.D.N.Y.1997)(citing *Berry v. Schweiker.*, 675 F.2d 464, 467 (2d Cir. 1982)). Step One requires the ALJ to determine whether the claimant is presently engaged in substantial gainful activity ("SGA"). § 416.920(b). If a claimant is engaged in SGA, they will not be considered disabled. If the claimant is not engaged in SGA, Step Two requires the ALJ to determine whether the claimant has a severe impairment. § 416.920(c). If the claimant is found to suffer from a severe impairment, Step Three requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P. § 416.920(d). If the impairment meets or equals a listed impairment, the claimant is presumptively disabled. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.1984). If the claimant is not presumptively disabled, at Step Four the ALJ must consider whether claimant's residual functional capacity ("RFC") precludes the performance of past relevant work. § 416.920(e). At Step Five, the ALJ determines whether the claimant can do any other work. § 416.920(f).

The claimant has the burden of showing that they cannot perform past relevant work. *Ferraris*, 728 F.2d at 584. However, once the claimant meets that burden, the Commissioner· can deny benefits only by showing, by specific reference to medical evidence, that the claimant can perform some less demanding work. *See White v. Secretary of HHS*, 910 F.2d 64, 65 (2d Cir.1990); *Ferraris*, 728 F.2d at 584. In making this showing the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills to determine if the claim-

ant can perform other work existing in the national economy. § 416.920(f); *see New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990); *see also Ferraris*, 728 F.2d at 585 (four factors used to determine if claimant can perform other work: age, education, physical ability, and work experience)(citing 42 U.S.C. 423(d)(2)(A)).

In the instant case, the ALJ found that the plaintiff met the requirements of Step One because she has not engaged in substantial gainful employment since September 19, 1994. (Tr. 44). The ALJ also determined that the plaintiff suffered from asthma, mild chronic obstructive pulmonary disease, and depression.[3] *Id.* However, in applying the Third Step, the ALJ determined that the plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to one listed in Appendix 1, Subpart P, Regulations No. 4. *Id.* At Step Four, the ALJ determined that the plaintiff was unable to perform her past relevant work as a restaurant cashier and motel housekeeper. *Id.* Therefore, the ALJ proceeded to Step Five and determined that plaintiff was capable of performing sedentary work activities with the limitation that she avoid exposure to excessive smoke, fumes, chemicals, and noxious gases. *Id.* The ALJ's findings at the Fifth Step are in contention.

### 3. Step Five—Determination of Claimant's Ability to Perform Other Work

After considering the medical evidence and plaintiff's subjective complaints of pain, the ALJ determined that the plaintiff retained the residual functional capacity to perform

---

2. A claimant will be considered disabled if they demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In addition, the claimant's

Physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his past relevant work, but cannot considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national econ-

omy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

Therefore, plaintiff must not only carry a medically determinable impairment, but an impairment so severe as to prevent him from engaging in any kind of substantial gainful work which exists in the national economy.

3. Even though the plaintiff suffers from depression, the record does not establish, and plaintiff does not allege, that depression has prevented her from working.

sedentary work in a controlled environment where she would not be subjected to excessive smoke, fumes, chemicals, and noxious gases. (Tr. 42). However, the plaintiff maintains that her asthmatic condition meets or equals the listing for episodic respiratory disease found in Appendix 1, Subpart P, Regulations No. 4, § 3.00C.

## A. *Residual Functional Capacity Standard of Review*

For purposes of Step Five, RFC is what a claimant is capable of doing despite their impairments. 20 C.F.R. § 416.945(a). The RFC is determined by considering all relevant evidence, consisting, inter alia, of physical abilities; symptoms including pain;[4] and descriptions, including that of the claimant, of limitations which go beyond the symptoms. § 416.945. Physical abilities are determined by the evaluation of exertional and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis. § 416.945; *see* 416.967; 416.969a.

Thus, to determine whether a claimant can do a certain category of work, the ALJ must determine plaintiff's strength limitations, or exertional capacity, which include the ability to sit, stand, walk, lift, carry, push, and pull. § 416.969a(a). Nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." § 416. 969a(c)(vi). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen*, 737 F.Supp. 180, 183 (N.D.N.Y.1990). In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Ferraris*, 728 F.2d at 587; *LaPorta*, 737 F.Supp. at 183; *Sullivan v. Secretary of*

*HHS*, 666 F.Supp. 456, 460 (W.D.N.Y.1987); *see* § 416.946. The RFC is then used to determine particular types of work a claimant may be able to perform. § 416.945(a).

Jobs in the national economy are classified by their physical exertion requirements as "sedentary," "light," "medium," "heavy," and "very heavy." § 416.967. Sedentary work requires the ability to lift no more than ten pounds, to sit for extended periods of time, and to walk and stand occasionally.[5] § 416.967(a). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." § 416.966(a). However, "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered" to exist in the national economy. § 416.966(b). If the claimant can do work that exists in the national economy a finding of not disabled will be made. § 416.966(b). However, if a claimant can do work that does not exist in the national economy, a finding of disability will be made. *Id.*

When a claimant's impairment and related symptoms, such as pain, only impose exertional limitations and the claimant's vocational profile is listed in an Appendix 2 Rule, the Rule is applied directly to determine disability status. § 416.969a(b). However, when combined exertional and nonexertional limitations exist, the Appendix 2 Rules provide only a framework for disability determination unless a rule directs a conclusion of disability. § 416.969a(d). Thus, when a claimant is incapable of the full range of a certain category of work, such as sedentary work, the evaluation of disability must be made on an individual basis rather than by a mechanical application of the Appendix 2 Rules. *Nelson v. Bowen*, 882 F.2d 45, 46 (2d Cir.1989). Moreover, the ALJ must consider subjective

---

4. Symptoms such as pain are considered when determining the RFC, as well as in determining whether a claimant has a severe impairment, and at all remaining steps in the disability determination. 20 C.F.R. § 416.929(a), (d).

5. Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files,

ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a)

complaints of pain[6] throughout this evaluation process. § 416.929(a), (d).

The ALJ is "not obliged to accept without question the credibility of such subjective evidence." *Marcus,* 615 F.2d at 27; *Peterson v. Gardner,* 391 F.2d 208, 209 (2d Cir. 1968); *Spicer v. Califano,* 461 F.Supp. 40, 47–48 (N.D.N.Y.1978). The ultimate question, however, is whether a claimant's affliction did, in view of their individual physical and mental makeup, cause symptoms which became so intensely severe that it forced them to quit working. *Marcus,* 615 F.2d at 27. Further, "[i]t is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where ... it is supported by objective medical evidence." *Simmons v. United States R.R. Retirement Bd.,* 982 F.2d 49, 56 (2d Cir.1992)(quoting *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983) (citations omitted)). An ALJ rejecting subjective testimony concerning pain and other symptoms "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen,* 666 F.Supp. 604, 608 (S.D.N.Y.1987); *see Valente v. Secretary of HHS,* 733 F.2d 1037 (2d Cir.1984).

Age, education, past work experience, and transferability of skills are vocational factors to be considered. A person under age 50 is considered a "younger person," whose age will not "seriously affect [claimant's] ability to adapt to a new work situation." § 416.963(b). Education as a vocational factor is seen to indicate the ability to meet job requirements such as reasoning, communication, and arithmetic. § 416.964(a). A person with education between seventh and eleventh grade is generally not considered capable of performing semi-skilled through skilled work. § 416.964(b)(3).

### B. *The ALJ's Finding That Plaintiff is Capable of Sedentary Work*

■ The ALJ's determination that the plaintiff was capable of performing sedentary work resulted first from the ALJ's finding that neither of the plaintiff's impairments met or equaled those listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 44). In particular, the ALJ noted that the plaintiff's chronic pulmonary disease and asthmatic condition have not resulted in multiple exacerbations requiring inhalation therapy or emergency room treatment in the frequency required by the regulations. (Tr. 41). With respect to asthmatic attacks, the regulations require that the attacks, in spite of prescribed treatment, occur once every two months or at least six times a year. *See* Appendix 1, Subpart P, Reg. No. 4, § 3.03 B. The record evidences that over a twelve month period the plaintiff was hospitalized once, and was treated in the emergency room three times for asthma exacerbation.[7] For example, on June 9, 1994, the plaintiff reported to the emergency room complaining that it was difficult to breathe. (Tr. 296). The following day, the plaintiff again reported to the emergency room with symptoms of wheezing and shortness of breath. (Tr. 298–99). At that time, it was reported that the plaintiff had an asthma attack after she smoked a cigarette and walked some stairs. (Tr. 299). On September 21, 1994, plaintiff visited the emergency room displaying symptoms of shortness of breath, wheezing, and

---

6. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological ·abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence required to be furnished, ... would lead to a conclusion that the individual is under a disability.
  42 U.S.C. § 423(d)(5)(A).

7. Plaintiff alleges that between May 1993 and April 1995, she was treated in the emergency room for acute exacerbation of her asthma symptoms on five separate occasions, and was admitted as an inpatient twice. However, the evidence contained in the record only identifies three emergency room treatments, not five. In addition, the regulations mandate that the evaluation period for asthma attacks must be based upon a twelve month period. Consequently, plaintiff's factual account regarding the frequency of medical treatments for asthma exacerbation is inaccurate.

chest tightness. (Tr. 300). Finally, the plaintiff was admitted to the hospital on September 27, 1994, following allegations that her breathing problems continued to get worse. (Tr. 305). Upon admission to the hospital, the plaintiff was given an intravenous steroid, oxygen, and an albuterol inhalation treatment. (Tr. 306). It was noted that the plaintiff continued to improve during her stay in the hospital. *Id.*

■ Notwithstanding, the defendant maintains that even if the plaintiff satisfied the frequency requirements for asthma attacks as prescribed by the regulations, she failed to adhere to a prescribed regimen of treatment offered by the treating physicians.[8] In particular, defendant notes that despite the repeated warnings and advice from the treating physicians, the plaintiff continued to smoke. It is well documented throughout the record that the plaintiff was advised that she should refrain from smoking. (Tr. 20, 21, 182, 185, 211, 307). In fact, on July 8, 1994, the plaintiff became hostile after being counseled once again on smoking cessation. (Tr. 331). It was also noted that the underlying cause of plaintiff's asthma and chronic obstructive pulmonary disease was her continued smoking. *Id.* Nevertheless, she continued to smoke. For instance, approximately three months following her second admission into the hospital for asthma exacerbation, on December 5, 1994, the plaintiff reported that she was smoking half of a pack of cigarettes a day. (Tr. 21). Likewise, on April 24, 1995, it was reported that the plaintiff was still smoking half of a pack of cigarettes a day.[9] (Tr. 27).

Although the plaintiff experienced frequent exacerbations of asthma, resulting mostly from her failure to adhere to the prescribed treatment, there is no support for the plaintiff's contention that such asthmatic exacerbations met or equaled the frequency required for a episodic respiratory disease found in Appendix 1, Subpart P, Regulations No. 4, §§ 3.00 C, 3.03 B. As discussed above, the record also indicates that she failed to adhere to her prescribed regimen of treatment as required by the listing. Therefore, the ALJ's determination that the plaintiff's severe impairments neither met nor equaled those listed in Appendix 1, Subpart P, Regulations No. 4, is supported by substantial evidence.

Finding that the plaintiff was not presumptively disabled and also incapable of performing her past relevant work, the ALJ next determined that the plaintiff was capable of performing sedentary work. (Tr. 44). This determination was primarily based upon the opinions of plaintiff's treating physicians, reports submitted by consultant examiners, and the plaintiff's ability to participate in various daily and social activities. (Tr. 42–44). A review of the record establishes that there is substantial evidence to support the ALJ's opinion that the plaintiff was capable of performing sedentary work in a controlled environment free from excessive smoke, fumes, chemicals, and noxious gases.

On October 7, 1994, the plaintiff's primary treating physician, Doctor Kenneth Ripp ("Ripp"), reported that the plaintiff suffered from chronic obstructive pulmonary disease,

---

8. When a respiratory impairment is episodic in nature, as can occur with exacerbations of asthma, ... the frequency and intensity of episodes that occur despite prescribed treatment are often the major criteria for determining the level of impairment. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. Appendix 1, Subpart P, Reg. No. 4, § 3.00 C (emphasis added).

9. Plaintiff maintains that it should not be presumed that she can voluntarily *quit* smoking. Absent the voluntary ability to quit smoking, the plaintiff claims she cannot be denied benefits for failing to follow her physician's instruction that she quit smoking. *See Caprin v. Harris,* 511

F.Supp. 589, 590 (N.D.N.Y.1981); *Rousey v. Heckler,* 771 F.2d 1065 (7th Cir.1985); *Gordon v. Schweiker,* 725 F.2d 231 (4th Cir.1984). However, plaintiff has misconstrued defendant's argument. It is not being argued that though the plaintiff is disabled, she should be denied benefits pursuant to § 416.930(a). Rather, it is argued that the plaintiff should not be allowed to quantitatively qualify her asthma attacks to meet the disability listing where she fails to follow the prescribed regimen of treatment as required by the listing. *See Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)(holding that a claimant must meet all of the specified medical criteria before they can show that it matches a listing)(emphasis added).

asthma, and depression. (Tr. 309). Ripp noted that as a result of the plaintiff's asthma exacerbations, she was admitted into the hospital once in 1994 and sought treatment in the emergency room three times in 1994 and once in 1993. (Tr. 310). Nevertheless, Ripp opined that the plaintiff had the capacity to lift and carry a maximum of fifteen pounds; stand or walk for less than two hours per day; sit with no limitation on the number of hours per day; and push and pull with limitations on the upper extremities. (Tr. 311–12). Likewise, Doctor Mary Obear ("Obear"), who plaintiff claims has been treating her since the original appeal, reported on July 27, 1995, that the plaintiff experienced chronic back pain, asthma exacerbated by smoking, and depression. (Tr. 5, 427). Though the results of an MRI of the plaintiff's cervical spine showed a mild central disc bulge without spinal cord compression, Obear opined that these findings did not necessarily correlate with the symptoms in plaintiff's neck nor did they explain the pain in her back. (Tr. 427). In addition, Obear noted that pulmonary function tests performed on June 22, 1993, established that the plaintiff suffered from mild obstructive airway disease. *Id.* Finally, Obear opined that she could find no medical reason as to why the plaintiff could not perform light duty work in a controlled environment. *Id.*

In addition to the opinions of Ripp and Obear, the record contains reports from two consultative examiners which also support the ALJ's opinion that the plaintiff is not disabled. Following an examination, Doctor F. Javier Monreal ("Monreal") reported that although the plaintiff claimed that she had a ruptured disc in her neck and had problems with her back, the available CAT scan and x-rays did not confirm her allegations. (Tr. 170–71). Monreal found that the plaintiff's neurological examination was without any objective findings. (Tr. 172). In fact, Monreal stated that he did not have a good explanation as to why the plaintiff could not perform relatively simple occupations. *Id.* It was Monreal's opinion that the plaintiff did not possess any neurological limitations with respect to her neck and low back that would warrant a finding that she was totally disabled. (Tr. 173). Finally, Monreal indicated that with the proper amount of vocational training and social services support, the plaintiff should be able to return to the job market. (Tr. 172). Similarly, on December 12, 1994, Doctor David G. Saunders (":unders") reported that the plaintiff had full forward flexion, extension, and lateral rotation of her back. (Tr. 316). Saunders' findings upon physical examination of the plaintiff's neck, thyroid, heart, breasts, abdomen, and extremities were otherwise unremarkable. *Id.* In addition, Saunders noted that he could not find significant back pain, and that the assessment of plaintiff's mental status was perfectly normal. *Id.* Saunders concluded with the opinion that the plaintiff's severe asthma improves to moderate following the use of medication. *Id.*

To support the finding that plaintiff was not disabled, the ALJ noted the plaintiff's ability to participate in various daily and social activities.[10] (Tr. 43). In particular, the ALJ found that the plaintiff was able to watch T.V., listen to the radio, and visit with friends. (Tr. 41). In addition, the plaintiff testified that she is sometimes able to do laundry and clean the home. (Tr. 77). She further testified that while the kids are at school, she is sometimes able to make the

---

**10.** Although not cited by the ALJ, the record contains additional evidence that supports the determination that the plaintiff is not disabled. On July 30, 1993, an assessment of plaintiff's residual physical functional capacity found that the she had the capacity to occasionally lift fifty pounds and frequently lift twenty-five pounds; stand or walk for six hours in an eight hour work day; sit for six hours in an eight hour work day; and unlimited ability to push and pull. (Tr. 104–11). However, it was noted that the plaintiff should avoid any concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 108). On December 30, 1994, an additional assessment of plaintiff's residual physical functional capacity was performed. (Tr. 252–59). Likewise, this assessment also found that the plaintiff had the capacity to occasionally lift fifty pounds and frequently lift twenty-five pounds; stand or walk for six hours in an eight hour work day; sit for six hours in an eight hour work day; and an unlimited ability to push and pull. (Tr. 253). However, it was noted that the plaintiff should avoid any concentrated exposure to extreme cold or heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (Tr. 256).

bed, sweep the floor, and clean the bedroom. (Tr. 78). In addition, she stated that she usually tries to make the meals and is capable of shopping for odds and ends. (Tr. 79). As a result, the ALJ's finding that the plaintiff had the capacity to perform sedentary work is not inconsistent with the plaintiff's ability to perform various activities involving daily living.[11]

■ Plaintiff's ability to perform sedentary work is evidenced by the reports and respective opinions of Ripp and Obear, the consultant examiners, the assessments of plaintiff's residual functional capacity, and the plaintiff's ability to participate in various activities. Therefore, the ALJ's conclusion that the plaintiff is capable of performing sedentary work in an environment without excessive smoke, fumes, chemicals, and noxious gases is supported by substantial evidence. Nevertheless, there does not exist substantial evidence to support the ALJ's determination that the plaintiff's nonexertional limitations would not significantly compromise her ability to perform a full range of sedentary work.

■ Where a claimant's range of work is significantly diminished, the Secretary must present evidence showing that there are still jobs in the national economy for an individual with the claimant's limitations. *Santiago v. Apfel*, No. 96–Civ–6521, 1998 WL 247504, at *6 (S.D.N.Y. May 15, 1998)(citing *Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986)). Consequently, where nonexertional limitations significantly diminish the ability to perform a full range of work, it is appropriate that the ALJ present testimony from a vocational expert establishing that there are still jobs in the national economy that the claimant is capable of performing. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996)(citing *Bapp*, 802 F.2d at 603)). Failure to present

any evidence demonstrating that there are jobs in the national economy that the claimant can perform may necessitate a remand. *See McKinzie v. Chater*, No. 94–Civ–9183, 1996 WL 684169, at *5 (S.D.N.Y. Nov.25, 1996)(remanding so that the ALJ can determine whether there are any jobs in the national economy that claimant is still able to perform).

The plaintiff's difficulties as a result of asthma and chronic obstructive pulmonary disease are well documented throughout the record. Each of the treating physicians have noted plaintiff's lung problems. For example, Obear reported that the plaintiff experienced asthma and mild obstructive airway disease, requiring the use of inhalers and a home nebulizer. (Tr. 427). Although Obear opined that the plaintiff was capable of performing light duty work, she restricted the light duty work to a controlled environment. *Id.* Likewise, a consultant examiner noted that though plaintiff's physical examination was unremarkable, she did have severe asthma that improved to moderate with the use of medication. (Tr. 316). Finally, both assessments of plaintiff's residual functional capacity indicate that she should avoid working in areas where she would be exposed to fumes, odors, dusts, gases, and poor ventilation. (Tr. 108, 256).

Despite the ample evidence of plaintiff's environmental limitations, the ALJ opined that the plaintiff's range of work was not significantly compromised. Other than the ALJ's assumption that most jobs involving sedentary work require a "smoke free" environment, (Tr. 43) the ALJ presented no evidence to support the opinion that the plaintiff's nonexertional limitations would not significantly compromise her ability to perform a full range of sedentary work. Consequently, the ALJ's finding is not supported by substantial evidence. Moreover,

11. Plaintiff's subjective complaints of pain involving her back, legs, and arms are not supported by the objective diagnostic evidence. For example, On January 7, 1992, the plaintiff had an x-ray of her cervical spine which found only mild degenerative changes. (Tr. 158). Approximately one month later, following additional complaints of pain, the plaintiff underwent a CAT scan of her cervical spine. (Tr. 162). The CAT scan failed to show any evidence of pathology involv-

ing the cervical spine and its canal contents. *Id.* With respect to her extremities, x-rays demonstrated that the plaintiff's left leg, left knee, and left hand were all without significant abnormalities. (Tr. 163). Finally, an MRI of the plaintiff's cervical spine established that she experienced a mild central bulge of the disc at the C5/6 area. (Tr. 165). Nonetheless, the remainder of the report indicated that the MRI was essentially negative. *Id.*

the record supports a finding that the plaintiff's ability to perform a full range of sedentary work is in fact significantly diminished, necessitating a remand for further factual development.

Therefore, on remand, the ALJ must present the testimony of a vocational expert or other similar evidence showing that there are jobs in the national economy that the plaintiff is able to perform notwithstanding her non-exertional limitations. § 416.966(a)(b) Otherwise, plaintiff should be considered disabled and entitled to disability benefits pursuant to § 416.966(b).

## V. *CONCLUSION*

It is

ORDERED that

1. The decision denying the plaintiff disability benefits is REVERSED; and

2. The matter is REMANDED for further proceedings in accordance with this opinion.

IT IS SO ORDERED.