Pasqualina MISURACA, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

No. 81 CV 855 (ERN).

United States District Court, E.D. New York.

April 7, 1983.

**244**

John T. McManus, Far Rockaway, N.Y. (The Legal Aid Society, Joan Heckerling, Far Rockaway, N.Y., of counsel), for plaintiff.

Raymond J. Dearie, U.S. Atty. for the Eastern District of New York by Robert L. Begleiter, Asst. U.S. Atty., Brooklyn, N.Y. (Frank V. Smith, III, Regional Atty., and Barbara L. Spivak, Dept. of Health and Human Services, New York City, of counsel), for defendant.

### MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

Plaintiff brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the defendant Secretary of Health and Human Services (Secretary) which denied her application for Supplemental Security Income (SSI) benefits. The parties have each moved for judgment on the pleadings.

The administrative record (Tr.) reveals that plaintiff came to the United States from Italy with her husband in 1962. She was then 23 or 24 years old and had a fifth grade education. Tr. 29. Upon arrival here she worked only for a week or two as a sewing machine operator but could not continue for lack of experience. Tr. 30. She was 41 years old at the time of her hearing and has three children, a daughter born in mid-1963, now age 19, a daughter age 16, and a son age 11, all of whom are attending school. Tr. 30–31. Her husband, separated from the family, provides no support and she does not know where he is. Tr. 37–38. The family's income is derived from welfare. Tr. 38. However, she has a sister in her home who owns an automobile and works, and drops plaintiff off at the Peninsula Hospital Center where plaintiff has been an outpatient. Plaintiff uses the bus to return home and also to come to the hearing. Tr. 32, 35.

Following the denial of her application for SSI benefits on initial and reconsidered review, plaintiff received a *de novo* hearing before an administrative law judge (ALJ). She was represented by counsel at the hearing and testified in Italian through an interpreter, stating she could only read or write Italian "a little bit," and could not read or write English. Tr. 29, 38. This was in contrast to information on an earlier SSA form, which indicates that she spoke English and did not need assistance in prosecuting her claim. Tr. 62.

Plaintiff's disability claim at the hearing was essentially that she has suffered from severe pains in her lower back for "many years," to relieve which she wears a corset and takes Tylenol and Indocin. Tr. 33. Although she testified to visiting the Peninsula Hospital outpatient clinic for many years, the earliest record of radiological examination of her lumbosacral spine is dated May 12, 1978, which revealed "No bone or joint abnormality." Tr. 93. In September 1978 a bilateral mammography failed to reveal any basis for her complaints of breast problems. In November and December 1978 she again visited the Dermatology and Breast Clinics at Peninsula where she also complained of back pain and indicated she had had x-rays of "feet, neck, etc. etc." Tr. 89–90. In January and February 1979, at which time she weighed 183 pounds, she visited the outpatient clinic complaining of "dizzy spells" and "pain in heart" among other ailments. Tr. 88. At that time x-ray

examination of her left hip revealed no bone or joint abnormality. In April 1979 and again in November and December 1979 she was treated for various foot complaints, apparently due to obesity and improper foot gear.

On April 17, 1980, plaintiff was examined on behalf of the Secretary by Dr. Ernesto Lee, a specialist in orthopedic surgery. Tr. 97. He noted that she was 4 feet 10 inches in height, weighed 185 pounds and her blood pressure was 110/70. He found that she was able to walk adequately, with a full range of motion in hips, knees and ankles, and that she also had a full range of motion in shoulders, elbows and wrists with good grip and grasp in both hands. Although she also had a full range of motion in the cervical spine, he noted limited motion in the lumbar spine, but no paraspinal or para-cervical tenderness. He saw no indication of neurological involvement in the extremities, muscle atrophies or joint contractures. The x-ray report of plaintiff's right shoulder revealed no soft tissue calcification or other abnormality. However, hypertrophic [1] lipping and slight right-sided curvature was observed at L3–4–5 of the lumbar spine.

Dr. Lee diagnosed plaintiff as suffering from "lumbosacral strain, moderate" and "myalgia [2] of the shoulders." Tr. 97. In his opinion, she had the ability to walk 5 blocks, stand or sit for 2 hours, bend 2–3 times per hour, lift 20 pounds, and grasp and manipulate within normal limits.

On August 29, 1980, three weeks before the hearing, plaintiff was examined on her own behalf by Dr. Harvey Fishman, also a specialist in orthopedic surgery. Tr. 106. He noted plaintiff's statement that she had experienced lower back pain since 1966, wore a back brace, had pains in both legs and left hip region, and had been under the care of a Dr. Gershman. As did Dr. Lee, he found a moderate restriction of range of motion of her lumbosacral spine, noting diffuse tenderness in the sacro-iliac joints. He also referred to x-rays (not in the record) as revealing early degenerative changes with spondylosis [3] of L4–L5. *Id.* He diagnosed plaintiff's condition as "Chronic lumbosacral derangement secondary to degenerative osteoarthritis and spondylosis and obesity with weak spinal musculature." *Id.* Although he recommended that plaintiff use "Aspirin" as medication, he considered her "incapacitated" because of "permanent disability" and cannot work. *Id.*

In support of the foregoing, plaintiff also submitted "prescription pad" notes from two doctors associated in group practice. Tr. 102–05. These indicated treatment of plaintiff on March 3 and July 25 and 28, 1975, for "chronic low back syndrome since 1963," and stated that she was then unable to work. *Id.*

In making the findings the Secretary adopted, the ALJ concluded that plaintiff's low back syndrome was "moderate" and that the associated pain and added muscular pain in her shoulders (myalgia), although "significant," Tr. 12, was not as severely disabling as she testified. Tr. 13. The "Secretary is not obliged to accept without question the credibility of such subjective evidence." *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979). As pointed out in *Marcus, id.*:

> "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."

Here, the ALJ could properly assess plaintiff's credibility in light of her demeanor at the hearing, her conceded use of public transportation on many occasions, the mild

---

1. "Hypertrophy" is defined as "morbid enlargement or overgrowth of an organ or part due to an increase in size of its constituent cells." Dorland's Medical Dictionary, 24th ed., at 708.

2. "Myalgia" is defined as "pain in a muscle or muscles." *Id.* at 968.

3. "Spondylosis" is the abnormal immobility and consolidation (ankylosis) of a vertebral joint. *Id.* at 1426.

medication she was prescribed for pain, *e.g.,* Tylenol and aspirin, and her appetite as revealed in her failure to reduce her weight as recommended by doctors.

Furthermore, this is not a case where the Secretary is bound by "a treating physician's expert opinion" asserting disability, as in *Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63, 64 (2d Cir. 1980), and cases cited therein. Dr. Fishman's last minute examination and opinion of permanent disability obtained at her attorney's request is not that of a treating physician, and carries no more weight than that of Dr. Lee, retained by the Secretary, whose report of examination appears far more thorough. The "prescription pad" notes of other doctors, which are wholly unsupported by clinical or laboratory findings, and certainly warrant no conclusion that plaintiff was under their care since 1963, need not be accepted by the ALJ uncritically and without evaluation. See *Reyes v. Harris,* 482 F.Supp. 638, 641 (S.D. N.Y.1979). Indeed, the only "treating physician" here were the many doctors servicing plaintiff's frequent visits to the outpatient clinics of Peninsula Hospital Center. And as noted above, radiological examinations there in 1978 and 1979 revealed no bone or joint abnormalities in plaintiff's lumbosacral spine or hip, Tr. 91, 93, just as Dr. Lee's radiologist saw none in her shoulder. Tr. 96.

■ Finally, this is not a case where the Secretary was obliged to point out any particular jobs suitable for plaintiff because she was unable to return to her former type of work. *Cf. Jock v. Harris, Secretary of Health and Human Services,* 651 F.2d 133, 135 (2d Cir.1981), and *Campbell v. Secretary of the Department of Health and Human Services,* 665 F.2d 48 (2d Cir.1981), *cert. granted,* 457 U.S. 1131, 102 S.Ct. 2956, 73 L.Ed.2d 1348 (1982). The one or two weeks' job that plaintiff failed to perform 20 years ago can hardly be considered "former" work for which she is now disabled, thereby requiring the Secretary to demonstrate the existence of other jobs to which her skills would be transferable. The Secretary correctly treated plaintiff as wholly "unskilled or none" in work experience under his guidelines. See Regulations No. 16, Subpart I, 20 C.F.R. §§ 416.1564–1568, and Rule 201.23, Table No. 1 of Appendix 2. And pursuant to those guidelines, since plaintiff came within the 18–44 age bracket, she was properly considered "not disabled" even though unable to communicate in English.

In order to be eligible for SSI benefits plaintiff had the burden of proving that she was "unable to engage in *any substantial gainful activity*" by reason of physical or mental impairment." 42 U.S.C. § 1382c(a)(3), emphasis supplied. Having failed to meet that burden, plaintiff is not entitled to such benefits.

The Secretary's motion for judgment is granted and the Clerk is directed to enter judgment accordingly.

SO ORDERED.