Donna KENDALL, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security,[1] Defendant.

No. CV 96–4342.

United States District Court,
E.D. New York.

Aug. 6, 1998.

---

1. Kenneth S. Apfel was appointed Commissioner of Social Security on September 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel is substituted for John J. Callahan as the defendant in this action.

Lava, Levine & Miller by Eliot S. Levine, Hauppauge, NY, for Plaintiff.

Zachary W. Carter, U.S. Atty. Gen. by Nancy A. Miller, Special Asst. U.S. Atty. Brooklyn, NY, for Defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff, Donna Kendall, seeks judicial review, pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), of a final determination of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits. Both parties have moved for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The issue presented to the Court is whether the Commissioner's decision is based upon the correct legal standards and supported by substantial evidence. For the reasons discussed below, the case is remanded to the Commissioner for further administrative proceedings.

## BACKGROUND

### I. Procedural History

Plaintiff applied for a period of disability, and disability insurance benefits on December 27, 1994, alleging an onset date of February 17, 1994, and claiming to suffer from a "soft tissue injury of lower extremity, post three surgeries [right] knee." Transcript of Administrative Record ("Tr.") 64. Plaintiff met the special insured status requirements of the Act and is fully insured through June 30, 1999 (Tr. 64–68). The Social Security Administration ("SSA") denied her application on March 29, 1995 (Tr. 70). On April 5, 1995, plaintiff filed a request for reconsideration which was denied by letter of June 6, 1995 (Tr. 71, 74).

On June 16, 1995, plaintiff filed a request for a hearing which was held before an Administrative Law Judge (ALJ) on January 22, 1996 (Tr. 75). On January 26, 1996, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act (Tr. 19–23). The ALJ based his conclusion on the medical reports, x-rays, clinical examinations, and an MRI of plaintiff's right knee, all performed by or reviewed by plaintiff's treating physician. Dr. Ratzan. Dr. Ratzan's reports concerning plaintiff's knee revealed a stable patella, good tracking, full mobility, increased motor strength, and lessened pain (Tr. 111–132). After review of the medical evidence, the ALJ weighed the necessary factors and concluded that plaintiff was not disabled within the meaning of the Act because (1) her medical condition did not "meet or equal in severity the clinical criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1"; (2) plaintiff might not have been physically capable of performing her past relevant work as a dental assistant, which he categorized as light work; but (3) she retained a residual func-

tional capacity to perform sedentary work based on her vocational profile and exertional capacity for sedentary work (Tr. 21). Therefore, the ALJ determined that plaintiff was capable of performing "at least" sedentary work (*id.*). Thus, plaintiff was not entitled to disability insurance benefits.

On March 5, 1996, plaintiff filed an appeal from the ALJ's opinion, and supplemented the appeal by letter of March 20, 1996. Plaintiff's request for review was denied on August 9, 1996 (Tr. 2–3). As a result of the Appeals Council's action, the ALJ's determination of January 26, 1996 became the final decision of the Commissioner. *Perez v. Chater,* 77 F.3d 41, 44 (2d Cir.1996).

## II. *The Administrative Record*

### A. *Vocational Evidence*

Plaintiff was born on May 18, 1963, and was thirty-two years old at the time of the ALJ's decision (Tr. 64). She has a high school education, and was last employed as a dental assistant (Tr. 47, 48). Plaintiff's job involved standing and sitting (Tr. 48) and on occasion she would have to physically extract a patient from a chair and administer cardiopulmonary resuscitation (Tr. 48, 55).

On September 5, 1991, plaintiff injured her knee at work. She has not worked since February 19, 1994 (Tr. 48–49). As a result of her knee injury, she underwent three surgical procedures on her right leg. In January of 1992, plaintiff had her first knee surgery, and her second and third surgeries were in February and August of 1994 respectively (Tr. 49–51).

As a result of the pain in plaintiff's knee she takes Anaprox, a prescription anti-inflammatory and muscle relaxant, on an "as needed" basis to relieve the "sharpness" of the pain (Tr. 50–51, 57). Plaintiff also uses a TENS unit, which electrically stimulates her leg, as another way to relieve pain, (Tr. 56–57) and attends physical therapy two to three times a week (Tr. 52).

Plaintiff complains that her right knee has given out twice, causing her to fall, and that she experiences right leg pain and numbness (Tr. 52–53). She used a cane when her leg was "tender" but she discontinued its use when the cane caused her arm pain (Tr. 55). Plaintiff admittedly can walk for ten to fifteen minutes with intermittent pausing, but at a slower pace with a slight "pitch" (Tr. 53–54). She also admitted to being able to stand and sit for fifteen minutes to one half-hour (Tr. 54–56, 59). Plaintiff has trouble negotiating stairs, and needs help with household chores, but she can dress herself, and do leg exercises daily and has difficulty driving only on her "bad days" (Tr. 58, 59).

### B. *Medical Evidence Before the ALJ*

### 1. *Knee Pain*

On January 7, 1992, plaintiff underwent arthroscopic surgery and surgical release of the right medial plica in order to remedy her post-traumatic medial condyle chondromalacia and medial synovial plica (Tr. 92). On February 22, 1994, due to findings of recurrent lateral subluxation dislocation of the right patella with chondromalacia, Dr. Ratzan performed a right knee arthrotomy with patella realignment and internal fixation. Plaintiff's discharge summary dated February 26, 1994 stated, inter alia, that plaintiff's condition was "improved" (Tr. 98–99). From the date of this surgery, February 22, 1994, until October 19, 1995, Dr. Ratzan listed plaintiff as totally disabled (Tr. 110–133).

Between March 3, 1994, and July 18, 1994, plaintiff was x-rayed five times. Each exam showed progressive healing, and a stable patella (Tr. 111–118). On August 23, 1994, Dr. Ratzan removed a "painful" screw from plaintiff's knee (Tr. 105–106). She stopped therapy for a few weeks but was told to resume therapy in September (Tr. 120).

On September 29, 1994, Dr. Ratzan reported that plaintiff was showing mild patella femoral symptoms without evidence of instability of her patella (Tr. 122). At plaintiff's monthly exam on October 24, 1994, she reported a locking feeling for two days which Dr. Ratzan attributed to a possible "loose body," but Dr. Ratzan reported that the patella was still stable (Tr. 123). On November 21, 1994, Dr. Ratzan diagnosed crepitus in the patella, but reported that the patella was still stable, and directed plaintiff to get an MRI (Tr. 124). In his report concerning plaintiff's December 16, 1994 visit, Dr. Rat-

zan contended that there was still crepitus, but the knee was improved overall (Tr. 125). The doctor also noted that the report from the MRI taken on November 25, 1994 indicated post operative changes, small effusion, and mucoid degenerative change of the posterior horn medial meniscus (Tr. 107). Nevertheless, Dr. Ratzan's report stated that the MRI was "o.k." (Tr. 125). On January 30, 1995, Plaintiff complained of pain with increased activity, but did not have any patella femoral crepitus (Tr. 126).

Plaintiff was examined by Dr. Ratzan on February 13, 1995, after her knee buckled, causing her to fall. Dr. Ratzan noted that plaintiff had some tenderness in the knee, but advised her to increase her activities anyway (Tr. 127). On March 20, 1995, Dr. Ratzan noted that plaintiff's right knee had good motion, and that her patella was stable but there was pain with increased activity with patella femoral chondromalacia (Tr. 128). Plaintiff's right knee buckled again on April 18, 1995, requiring another visit to Dr. Ratzan. In his report from plaintiff's April 20, 1995 office visit, the doctor noted that the knee had improved, and that there was increased motor power. Dr. Ratzan also reported that the knee was still tender but there was less pain with increased activity (Tr. 129).

At the June 5, 1995 visit to Dr. Ratzan, the doctor reported that plaintiff had a stable patella but also exhibited symptoms subluxation. She also had lateral trochantaric tendonitis and pes bursitis (Tr. 130). Dr. Ratzan then directed plaintiff to consult Dr. Unis (Tr. 130). Dr. Ratzan's report from July 24, 1995 notes that Dr. Unis agrees that there is good tracking and stability of the patella (Tr. 131). Dr. Ratzan concluded that plaintiff's knee exhibited a slight improvement (Id.).

On plaintiff's September 7, 1995 visit to Dr. Ratzan, she complained of tenderness over the anterior tibial tubical, although it was less tender. The doctor also noted that there was good patella femoral tracking and that the patella was stable, but he was considering revision of the scar and exploration of the tibial tubical if symptoms persisted (Tr. 132).

Finally, on October 19, 1995, Dr. Ratzan concluded that plaintiff had a mild to moder-

ate partial disability to the knee (Tr. 134). In addition to reporting that plaintiff's knee had full motion and her patella was stable with no patella femoral symptoms, Dr. Ratzan instructed plaintiff to continue using the TENS unit (Tr. 134). Plaintiff was also advised to do exercise at home and to continue the use of her pain medication and anti-inflammatories (Tr. 136).

### 2. Residual Functional Capacity

As noted above, plaintiff testified that she has a high school education and last worked as a dental assistant (Tr. 47–48). She said that she can walk for about ten to fifteen minutes at a time although at a slower pace than before her injury (Tr. 54). She can also stand for fifteen minutes to one half hour without problems, and she does not have any limitations with her arms when she is not using her cane (id.). Plaintiff is capable of sitting for about fifteen minutes to one half hour, but cannot sit for a "long period of time" because her leg goes numb and she must "move around a little bit" before she is able to sit back down (Tr. 59). As noted, *supra*, plaintiff can dress herself, and do leg exercises, but she needs her husband's help to take care of the house, and drive her to her destination on "bad" days (Tr. 58, 59). She also takes an anti-inflammatory, and a muscle relaxant on an "as needed" basis which helps to relieve some of the pain's sharpness, but it does not relieve all of the pain (Tr. 50–51). There has been no medical evidence offered to establish plaintiff's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop or crouch as is required by 20 C.F.R. § 404.1545(b). Plaintiff's attempts to obtain such information in a Comprehensive Medical Narrative Report have been frustrated because her treating physician no longer provides such Narrative Reports, and the Commissioner did not supply such information because plaintiff was never evaluated by one of the Commission's physicians.

### DISCUSSION

### III. Applicable Law

#### A. Standard of Review

 It is well settled that the Court may set aside the decision of the Commis-

sioner only if it is not supported by substantial evidence or if it is based upon an erroneous legal standard. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). Substantial evidence is defined as "more than a mere scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). The record must be read as a whole, and if the evidence is susceptible to more than one rational interpretation, it is [the Commissioner's] conclusion which must be upheld. *Rosario v. Sullivan,* 875 F.Supp. 142, 146 (E.D.N.Y.1995).

### B. *The Commissioner's Procedure for Evaluating Disability Claims*

Plaintiff is eligible to receive benefits under the Act if she is incapable of engaging in any kind of substantial gainful work, including but not limited to her previous employment, which exists in the national economy, considering her age, education, and work experience. *See* 42 U.S.C. § 423(d)(2)(A). To aid in evaluating disability claims, the Second Circuit has expounded the five-step process as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the *residual functional capacity* to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work. If the claimant satisfies her burden of proving the requirements in the first

four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working.

*Perez,* 77 F.3d at 46; *see also* 20 C.F.R. § 404.1520 (regulations governing five-step process).

▋ In the case at bar, the ALJ correctly found that despite the medical record evidencing a severe impairment to plaintiff's right knee, the record "does not disclose medical findings which meet or equal in severity the clinical criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Tr. 21). Section 1.13 of the regulation provides that:

> Soft Tissue injuries of an upper or lower extremity, requiring a series of staged surgical procedures within 12 months after the onset for salvage and/or restoration of major function of an extremity, and such major function was not restored or expected to be restored within 12 months after the onset.

There is substantial evidence in the record to show that the major function of the knee was restored within twelve months after the first surgery in February 1994 despite Dr. Ratzan's diagnosis of complete disability.

The ALJ conceded that plaintiff might not be capable of the light work demands of a dental assistant, but he relied on Rule 201.27 and 201.28 of the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2 for the proposition that a claimant with the exertional capacity for sedentary work is not disabled if she is young, and has a high school education, regardless of her skill levels.

▋ As a general rule, a treating physician's opinion is given controlling weight when supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d); *see Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993). Here, the ALJ correctly concluded that the treating physician's opinion was not to be given controlling weight. The ALJ weighed the symptoms that plaintiff complained of in the medical reports and in her

testimony against the documented improvement that her knee exhibited nearly every month. The treating physician's diagnosis of total disability until September 1995 is, as the ALJ noted, "inconsistent with the findings on the MRI scan, and the nearly normal clinical findings" (Tr. 21).

Where, as here, the treating physician's opinion is not controlling, § 404.1527(d) provides that the following factors should be considered in determining whether there is a disability or not: the length of the treatment relationship and the frequency of the examinations, the extent to which the treating source's opinion is supported by medical signs and laboratory findings, the degree to which the treating source's opinion is consistent with the record as a whole, and whether the treating source is a specialist in the area in which the opinion is given.

On the facts presented here, the most important of these factors is the extent to which the treating source's opinion is supported by medical signs send laboratory findings. Although Dr. Ratzan indicated that plaintiff had a total disability, he repeatedly reported that plaintiff's knee had improved. Dr. Ratzan noted at each exam from March 3, 1994 through July 18, 1994 that the x-rays and examinations of plaintiffs' knee showed progressive healing and a stable patella (Tr. 111–118). The MRI taken on November 25, 1994 was reported as "o.k" (Tr. 125). Even after plaintiff's knee buckled in February of 1995, plaintiff's treating physician directed her to increase her activity (Tr. 127). Dr. Ratzan also mentioned that the motion of the knee was good (Tr. 128) and that plaintiff exhibited increased motor power (Tr. 129).

■ The symptoms of which plaintiff complained, such as crepitus, are not dispositive of whether she had a disability. The Commissioner does not have to accept plaintiff's subjective testimony about her symptoms without question. *Misuraca v. Secretary of Health and Human Servs.*, 562 F.Supp. 243, 245 (E.D.N.Y.1983); *see Rosado v. Shalala*, 868 F.Supp. 471, 473 (E.D.N.Y.1994). Plaintiff's impairment must be compared to objective medical evidence to determine whether a disability exists. 20 C.F.R. 404.1529(c)(2); SSR 96–7p. If, as here, the symptoms that

plaintiff complains of are greater than the restrictions that can be demonstrated by the objective evidence, additional factors must be examined. These factors include:

1. The claimant's daily activities;
2. The nature, location, onset, duration, frequency, radiation, and intensity of pain or other symptoms;
3. Precipitating and aggravating factors;
4. Type, dosage, effectiveness, and adverse side-effects of medication that the claimant has taken to alleviate her symptoms;
5. Treatment, other than medication, for relief of pain or other symptoms;
6. Any measures which the claimant uses or has used to relieve her pain or other symptoms.

20 C.F.R. 404.1529(c)(3); SSR 96–7p.

■ After conducting a hearing at which the ALJ considered these issues, he concluded that plaintiff's complaints were not credible, and that the medical evidence did not support the extent of her complaints. The Court finds the ALJ's opinion was supported by substantial evidence including, but not limited to, the x-rays and the MRI which show progressive healing, and the numerous office visits at which plaintiff exhibited increased motion of the knee, and increased motor strength. There is no doubt that plaintiff had an impairment, but in order to be disabled there must be evidence of "more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir.1983). The lack of evidence showing that the pain was so severe that it became disabling precludes plaintiff from being found disabled based on her reported symptoms.

■ Finally, we must turn to the fifth step of the disability evaluation process to determine if the ALJ correctly decided that plaintiff was able to engage in gainful employment within the national economy. At this stage, the Commissioner bears the burden of proving, through substantial evidence

for each criteria of the physical requirements, that plaintiff has the residual functional capacity to perform sedentary work. *LaPorta v. Bowen,* 737 F.Supp. 180, 183 (E.D.N.Y.1990). As defined in 20 C.F.R. § 404.1567(a) sedentary work:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

■ The Commissioner's burden is not met by the ALJ's conclusory statement that plaintiff has the capability to perform sedentary work. The Commissioner must demonstrate through medical evidence whether and to what extent plaintiff is capable of performing each of the RFC elements and come to a conclusion as to her end result RFC. *See Sullivan v. Secretary of Health and Human Servs.,* 666 F.Supp. 456, 460 (W.D.N.Y.1987).

The record presently before the Court lacks the requisite medical evidence necessary to support the Commissioner's determination that plaintiff is capable of performing sedentary work. She may well be so capable, but that determination is not supported by substantial evidence. Accordingly, the case is remanded for further development of the medical record insofar as it relates to each of the RFC elements discussed above, and for a new determination regarding plaintiff's RFC and eligibility for disability insurance benefits.

### CONCLUSION

The Commissioner's motion is denied and the plaintiff's motion is granted to the extent that it seeks remand. This case is remanded to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.