Geraldo PEREZ, Plaintiff,

v.

Joanne B. BARNHART, Commissioner
of Social Security Defendant.

No. 00 CV 4988(WK).

United States District Court,
S.D. New York.

Dec. 5, 2002.

*OPINION & ORDER*

WHITMAN KNAPP, Senior District
Judge.

Plaintiff Geraldo Perez ("Perez" or
"Plaintiff") brings this action against Jo
Anne B. Barnhart, the current Commis-
sioner of Social Security [1] ("Defendant" or
"Commissioner") pursuant to 42 U.S.C.
§ 405(g) to obtain judicial review of the
Commissioner's decision that plaintiff was
not disabled at any time from May 15,
1995 through February 23, 1998. Both
Plaintiff and Defendant have moved for
Judgment on the Pleadings pursuant to
Rule 12(c) of the Federal Rules Civil Pro-
cedure. Alternatively, Plaintiff has re-
quested that the matter be remanded for a
new hearing.

## BACKGROUND

The facts which follow are presented as
set forth in the administrative record in
this case, which was certified on October
11, 2000.

### I. Plaintiff's Background and Testi-
mony

Plaintiff was born in Cuba on September
26, 1956 and immigrated to the United
States in 1980. He completed the sixth
grade in Cuba, is able to read and write in
Spanish only, and speaks some English.
Plaintiff currently lives with his wife and
two children in a second-floor apartment
building that does not have an elevator.

From 1987 to 1993, Plaintiff worked as a
housing caretaker for the New York City

---

1. This action was originally brought against
Kenneth S. Apfel, Acting Commissioner of
Social Security. Subsequently, he has been
succeeded by Jo Anne B. Barnhart, the cur-
rent Commissioner of Social Security. She is
therefore substituted in this action, pursuant
to Fed. R.App. 43(c)(1).

Housing Authority (N.Y.CHA). That job required lifting and carrying garbage bags, mopping, and cleaning the outside grounds of a building. On March 13, 1993, while shoveling snow on a set of stairs during the course of his employment, Plaintiff fell and injured his back.. Plaintiff then filed a Worker's Compensation claim and was awarded disability benefits for the period from March 16, 1993 to April 5, 1993. Shortly thereafter, he quit his job because he was "feeling bad" and lost his apartment in New York. Tr. at 48 [2]. Plaintiff then moved to Florida to live with his mother where he worked helping to install sprinkler systems. Most recently, he worked as a security guard in New York. He left this position because the job ended. Neither the position as a sprinkler installer nor as a security guard required any lifting or carrying of heavy objects. Both of these jobs allowed Plaintiff to alternate between sitting and standing during the work day.[3]

Plaintiff has not held a regular job since May 15, 1995, when his job as a security guard ended, which he attributes to lower back pain, numbness in his legs, knees "falling asleep", and difficulty sleeping at night. He testified that he can walk only half a block without stopping and that he can not sit or stand for more than 15 minutes at a time. Tr. at 51.

## II. The Relevant Medical Evidence

After injuring his back, Plaintiff was treated at Bronx Cross County Medical Group by Dr. Martin Valdes on March 16, 1993. Dr. Valdes diagnosed a low back strain and indicated that Plaintiff could return to work one week later on March 22, 1993.

On May 20, 1996 Dr. Robert H. Greenberg, a licenced chiropractor, began treating Plaintiff for his back injury. On June 7, 1996, Dr. Greenberg diagnosed Plaintiff with sacroiliac subluxation on his left side and advised that he could stand or walk for no more than two hours per day, sit for no more than six hours per day, and carry no more than 15 pounds for a few minutes at a time. Tr. at 120. Dr. Greenberg concluded that Plaintiff was "totally disabled and cannot work." (Tr. at 124). Dr. Greenberg later confirmed his diagnosis and submitted a Residual Functional Capacity Form which indicated that in an eight hour work day Plaintiff could lift up to 5 pounds, sit up to 20 minutes, stand for no more than two hours, could not use his left hand for pushing or fine manipulations, and could not use either leg for pushing and pulling.

Dr. Mario Mancheno, a Social Security Administration Consultative Physician, examined Plaintiff on July 9, 1996. Dr. Mancheno found that Plaintiff did not need a cane for ambulation and demonstrated a full range of motion in his neck as well as throughout his upper and lower extremities. Dr. Mancheno diagnosed Plaintiff with discogenic disorder of the lumbosacral spine and indicated that Plaintiff's impairment was moderate with respect to lifting and carrying, standing and walking, pushing and pulling, and sitting.

**2.** References to "Tr. at _" are to pages in the transcript of the administrative record certified on October 11, 2000.

**3.** The record is ambiguous with respect to exactly when Plaintiff held these jobs and how long they lasted."Claimant's Work Background undated" indicates that Plaintiff's position as a sprinkler installer lasted from December 1994 to August 1995, and his position as a security guard lasted from September 1995 through December 1995, Tr. at 130, while Plaintiff's Disability Report does not mention the sprinkler installation position whatsoever, and lists the duration of the security guard position as 1994 to May 1995. Tr. at 104, Exhibit 2E.

On October 2, 1997, Plaintiff reported to the emergency room at St. Barnabas Hospital complaining of severe back pain with numbness in the left leg on and off for three days. He was not taking any medications at the time. Plaintiff was diagnosed with a lumbar strain and was given two medications to help alleviate his pain. Three hours later he was feeling better and was discharged to his home.

On October 10, 1997, Plaintiff reported to the orthopedic clinic at St. Barnabas Hospital for a follow-up visit. The parties' memoranda of law conflict with respect to some portions of Plaintiff's diagnosis during this hospital visit.[4] However, the physician's notes clearly indicate that Plaintiff's neurological examination was normal and his x-ray revealed only mild degenerative joint disease.

The record contains additional medical evidence conducted by various physicians between April 30, 1998 and March 9, 1999, after the date of the ALJ's decision. However, for the reasons later explained, we need not consider such evidence in reviewing the ALJ's decision.

## III. Procedural History

On June 11, 1996, Plaintiff filed a Title II application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI") alleging an onset of disability on May 15, 1995. When these requests were denied upon initial review and again upon reconsideration, Plaintiff obtained a hearing before Administrative Law Judge Robin J. Arzt (the "ALJ"), at which Plaintiff was represented by counsel.

On February 23, 1998, the ALJ issued a written opinion finding that Plaintiff was not disabled from May 15, 1995 to the time of the hearing. Specifically, the ALJ found that (1) Plaintiff was not engaged in substantial gainful activity since May 15, 1995, (2) Plaintiff's impairment is considered to be "severe" under the regulations, (3) Plaintiff's impairment does not meet or equal in severity to a "listed impairment" under Appendix 1 to the regulations, and (4) Plaintiff is unable to perform his past relevant work as a housing caretaker for the New York City Housing Authority, which is exertionally medium work, but his residual functioning capacity does not preclude him from performing his past relevant work as a security guard and as a helper for a sprinkler system installer, both of which are exertionally light occupations. Tr. at 31. In the alternative, the ALJ found that, considering Plaintiff's residual functional capacity as well as other "vocational factors of his present age of 41, and age of 38 on the date of his application and illiteracy and inability to communicate in English, Section 202.16 of the Medical Vocational Guidelines direct[ed] a finding that [Plaintiff was] not disabled." Tr. at 31. Hence, the ALJ concluded that Plaintiff was not disabled and denied his appli-

---

4. Plaintiff interprets the examining physician's handwritten notes (Tr. at 142) as indicating a "back spasm, a limited range of motion, and positive straight leg raises," as well as "severe low back pain and left leg weakness and numbness." Plaintiff's Memorandum in Support of Plaintiff's Cross–Motion at 6, 13, 17 (herein "Pl. Mem."). The Defendant, on the other hand, construes these handwritten notes as indicating merely a mild degenerative joint disease. In addition, the Defendant asserts that the examining physician's notes are ambiguous with respect to whether they read back "spasm" or back "sprain", and "negative" straight leg raises or "positive" straight leg raises. Defendant's Memorandum in Support of his Motion at 5 n. 3 (herein "D.'s Mem."). Nevertheless, the exact language of this report is irrelevant to the disposition of this case because interpreting the notes favorably to Plaintiff, as we must on a motion for summary judgment, does not undermine the ALJ's decision.

cation. On May 15, 2000, the Appeals Council denied Plaintiff's request for review stating that there was no basis under 20 C.F.R. §§ 404.970 or 416.1470 for granting Plaintiff's request for review.

## DISCUSSION

### I. Standard of Review

"A Court may set aside the decision of the Commissioner only if it is not supported by substantial evidence or is based on an erroneous legal standard." *Berry v. Schweiker* (2d Cir.1982) 675 F.2d 464, 467. The issue before us then, is whether the ALJ's decision is supported by substantial evidence or was based on any erroneous legal standards. *See Rosa v. Callahan* (2d Cir.1999) 168 F.3d 72, 77. Hence, if this Court finds that there is substantial evidence supporting the Commissioner's factual determinations, those determinations must be upheld. *See Schauer v. Schweiker* (2d Cir.1982) 675 F.2d 55, 57.

### II. Definition of Disability

To receive federal disability benefits, an applicant must be "disabled" within the meaning of the Social Security Act. 42 U.S.C. § 423(a),(d). The Code of Federal Regulations defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than twelve months." 20 C.F.R. §§ 404.1505, 416.905.

The Commissioner has promulgated regulations which set forth a five-step sequential test to evaluate disability claims. 20 C.F.R. §§ 404.1520, 416.920 (1981). The Second Circuit has summarized this test as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry*, 675 F.2d at 467.

The Second Circuit has also set forth the burdens of proof at each step of this evaluation process. The claimant bears the burden of proof as to the first four steps, i.e., through the determination of whether he has the residual functional capacity to perform his past relevant work. If the claimant carries his burden at each of the first four steps, the Secretary bears the burden as to the last step, i.e., whether there is other work available in the national economy which the claimant has the ability to perform. *See Bowen v. Yuckert* (1987) 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 ("the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step."); *see also Berry*, 675 F.2d

at 467; *Carroll v. Secretary of Health and Human Services* (2d Cir.1983) 705 F.2d 638, 642.

Additionally, "[i]n determining whether a claimant is disabled, the Secretary must consider (1) objective medical facts and clinical findings, (2) diagnoses and medical opinions of examining physicians, (3) the claimant's subjective evidence of pain and physical incapacity as testified to by himself and others who observed him, and (4) the claimant's age, educational background, and work history." *Carroll,* 705 F.2d at 642.

### III.  Conclusions of Law

In the case at bar, the relevant objective medical evidence supports the ALJ's decision that Plaintiff retained residual functioning capacity to perform his jobs as a sprinkler installer's assistant and a security guard.  None of the medical evidence supports Plaintiff's claim that he was unable to perform his past relevant work as a helper to a sprinkler system installer and as a security guard.  Therefore, there is substantial evidence supporting the ALJ's decision that Plaintiff was not disabled from May, 15, 1995 to the date of the ALJ's decision.  Furthermore, the ALJ properly gave controlling weight to Dr. Mancheno and Plaintiff's treating physicians at St. Barnabas Hospital under the "treating physician rule" set forth in 20 C.F.R. § 404.1527(d)(2), which requires the ALJ to give controlling weight to a claimant's treating physician if it is well supported by medical findings and not inconsistent with other substantial record evidence. *See Shaw v. Chater* (2d Cir. 2000) 221 F.3d 126, 134.

In challenging the finding of the ALJ and the Appeals Council, Plaintiff argues that "the ALJ erred in pointing to no affirmative evidence proving Plaintiff's ability to perform each of the physical

requirements of exertionally light work." Pl. Mem. at 14.  However, Plaintiff's argument fails to recognize that the burden of proof as to whether the claimant has the residual functional capacity to perform past work is on the claimant. *See Berry,* 675 F.2d at 467 ("The claimant bears the initial burden of showing that his impairment prevents him from returning to his prior type of employment.").  The cases Plaintiff cites in support of this argument are distinguishable from the case at bar because in the those cases the ALJ denied the claimants application at step five of the sequential process, where the Commissioner bears the burden to prove that the claimant has the capacity to do other work in the national economy. *See Kendall v. Apfel* (E.D.N.Y.1998) 15 F.Supp.2d 262, 267–68; *LaPorta v. Bowen* (N.D.N.Y.1990) 737 F.Supp. 180, 183; *Sobolewski v. Apfel* (E.D.N.Y.1997) 985 F.Supp. 300, 314; *Davis v. Shalala* (E.D.N.Y.1995) 883 F.Supp. 828, 836.  In the instant case, the ALJ denied Plaintiff's claim at step four of the sequential evaluation process, where the claimant bears the burden to proof that he is unable to perform his past relevant work.  Tr. at 31.  Hence, the ALJ applied the proper legal standard in denying Plaintiff's application.

Plaintiff raises several other objections to the manner in which the ALJ and Appeals Council reached their decisions. First, he asserts that the ALJ improperly failed to consider Plaintiff's subjective complaints of pain.  The Second Circuit has held that "the subjective element of pain is an important factor to be considered in determining disability." *Mimms v. Heckler* (2d Cir.1984) 750 F.2d 180, 185. However, the Second Circuit has also held that "[t]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, re-

garding the true extent of the pain alleged by the claimant." *Marcus v. Califano* (2d Cir.1979) 615 F.2d 23, 27. *See also Jordan v. Barnhart* (2d Cir.2002) 29 Fed.Appx. 790, 794 (holding that an ALJ is entitled to make a credibility determination regarding the claimant's subjective complaints after specifically addressing these complaints and reviewing the medical evidence in the record). "If the Secretaries findings are supported by substantial evidence ... the court must uphold the ALJ's decision to discount the claimant's subjective complaints of pain." *Aponte v. Secretary, Dept. of Health and Human Services* (2d Cir.1984) 728 F.2d 588, 591. In the instant case, the ALJ properly considered Plaintiff's subjective complaints but declined to give weight to Plaintiff's testimony because it was not supported by the objective medical evidence and the rest of his testimony. Plaintiff testified that he suffered from permanent and consistent pain which was not helped by medications. Tr. at 49. However, contrasting Plaintiff's testimony is his evaluation at St. Barnabas Hospital, where he described his pain as "off and on for two years" and left the hospital three hours after receiving pain medications. Tr. at 138. In addition, Plaintiff testified that he had left his last job as a security guard on May 15, 1995 only because the job ended, and not as the result of his alleged disability. Tr. at 42. Thus, the ALJ's decision to discount Plaintiff's subjective complaints of pain is supported by substantial evidence.

Secondly, Plaintiff argues that the ALJ improperly decided to give no weight to Dr. Greenberg's medical findings. However, "[a]ccording to the [Social Security] regulations ... a chiropractor's opinion is *not* a medical opinion." *Diaz v. Shalala* (2d Cir.1995) 59 F.3d 307, 313 (emphasis in original). In *Diaz,* the Second Circuit made it clear that "[u]nder the current regulations, the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him; under no circumstances can the regulations be read *to require* the ALJ to give controlling weight to a chiropractor's opinion." *Diaz,* 59 F.3d at 314. In this case, Dr. Greenberg found that Plaintiff was "totally disabled and cannot work" (Tr. at 124). The ALJ held that this evidence conflicted with and was not supported by the balance of medical evidence collected by Dr. Mancheno and the physicians at St. Barnabas Hospital. These examining physicians conducted x-rays which came back normal. Moreover, the St. Barnabas physician concluded that Plaintiff's exertional impairment was only moderate. Hence, there is substantial evidence supporting the ALJ's decision that Dr. Greenberg's reports are contradicted by the balance of the objective medical evidence and therefore deserve no weight.

Finally, Plaintiff asserts that the Appeals Council improperly declined to consider or even acknowledge the properly submitted medical evidence gathered by Dr. Traugott, Dr. Escalera, and Dr. Ploski, after the ALJ's decision. Pl. Mem. at 10. In *Perez v. Chater,* (2d Cir.1996) 77 F.3d 41, the Second Circuit held, "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez,* 77 F.3d at 45. However, the Second Circuit explained that for this rule to apply, the evidence "must relate to the period on or before the ALJ's decision." *Perez,* 77 F.3d at 45. In *Perez,* the Second Circuit remanded the case and ordered the District Court to consider "medical reports made available or prepared after the ALJ's hearing, the substance of which concerned the patient's treatment *before* the hearing." *Brown on Behalf of Brown v. Chater* (S.D.N.Y.1996)

932 F.Supp. 71, 75 (emphasis added). The evidence submitted to the Appeals Council in this case concerned Plaintiff's treatment *after* the ALJ hearing.[5] Tr. at 160–177. Hence, the Appeals Council properly concluded that the additional evidence did not provide a basis for changing the ALJ's decision.[6] Tr. at 6.

As a result of our decision that the ALJ's finding that Plaintiff's residual functional capacity does not preclude him from performing his past relevant work as a security guard and as a helper for a sprinkler system installer is supported by substantial evidence, we need not consider the ALJ's alternative grounds for denying Plaintiff disability insurance under Section 202.16 of the Medical Vocational Guidelines.

## CONCLUSION

In light of the foregoing considerations, Defendant's Motion for Judgment on the Pleadings is GRANTED. The ALJ's decision that Plaintiff was not disabled under Chapter 7, Title II of the Social Security Act from the period of May 15, 1995 to February 23, 1998 is AFFIRMED. Plaintiff's action is DISMISSED in its entirety.

**SO ORDERED.**

---

5. The hand-written note by Dr. Escalera at Bronx–Lebanon Hospital indicates that Plaintiff had "been followed [up] at our medical practice since November 1977." Tr. at 164. However, there is no reference in any the evidence submitted to the Appeals Council to any medical examination, test or report conducted before the date of the ALJ's decision.

6. If Plaintiff's condition worsened sometime after the date of the ALJ's decision, nothing in this opinion precludes him from filing a new application for benefits, which should, of course, include the evidence which was submitted to the Appeals Council in furtherance of his present claim. *See e.g., DeChirico v. Callahan* (2d Cir.1998) 134 F.3d 1177, 1184 (Despite the denial of claimants present claim, "[the claimant] is, of course, free to file a new application for benefits, pursuant to the relevant regulations, and to present new evidence of his disability at that time.").